**In the Matter of Frank E. KNIGHT, Debtor–Appellant.**

No. 94–1965.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1994.

Decided May 3, 1995.

Arend J. Abel, Daniel B. Dovenbarger, Matthew R. Gutwein, Martha J. Arvin (argued), Office of Atty. Gen., Indianapolis, IN, for State of Ind., State Bd. Accounts.

Gary L. Hostetler, Laura A. Briggs (argued), Hostetler & Kowalik, Indianapolis, IN, for Frank E. Knight.

Before COFFEY and RIPPLE, Circuit Judges, and SKINNER, District Judge.*

RIPPLE, Circuit Judge.

The case before us concerns the eligibility of a person filing a bankruptcy petition for relief under chapter 13 of the Bankruptcy Code. An individual may qualify as a chapter 13 debtor only if he has regular income, his noncontingent and liquidated unsecured debts do not exceed $100,000, and his non-contingent and liquidated secured debts do not exceed $350,000. *See* 11 U.S.C. § 109(e). In this case, the bankruptcy court concluded that Frank E. Knight was not entitled to chapter 13 relief because he had more than $100,000 in unsecured debt. Mr. Knight appeals the district court's affirmance of the bankruptcy court's dismissal of his chapter 13 petition. Our review confirms that Mr. Knight's unsecured debts exceed the statutory limitation under chapter 13. We therefore affirm the district court's decision.[1]

# I

## BACKGROUND

### A. *Facts*

Mr. Knight was the Town Court Judge of Mooresville, Indiana; he resigned on October 15, 1990. On November 7, 1991, Mr. Knight filed a voluntary chapter 13 petition. The State of Indiana, State Board of Accounts ("SBA"), timely filed an unsecured claim for $108,949.50. The SBA's claim was based on its audit of the Mooresville Town Court operations for the period from January 1, 1987 to October 15, 1990. In the report of the audit results, the SBA explained that its examiners had discovered 915 instances in which Town Court Judge Knight had failed to report traffic convictions to the Indiana Bureau of Motor Vehicles ("BMV"). For each reporting failure, the SBA report stated, the Judge incurred a liability of $100.00, based upon Indiana Code § 9–4–7–9(c) and (e).[2] The SBA examiners also discovered that Mr. Knight had misappropriated, diverted or failed to account properly for $17,449.50. It

---

* The Honorable Walter Jay Skinner of the United States District Court for the District of Massachusetts is sitting by designation.

1. This court has jurisdiction over final decisions entered by district courts reviewing final bankruptcy court orders. 28 U.S.C. § 158(d); *In re Gould*, 977 F.2d 1038, 1040 (7th Cir.1992).

2. Ind.Code § 9–4–7–9 (1990) was later superseded, without substantive change, by § 9–30–3–11 (1993). The pertinent subsections state:

   (c) The court shall keep a full record of every case in which a person is charged with a traffic offense.... Within ten (10) days after the conviction, judgment, or forfeiture of security deposit of a person, the court shall forward a copy of the judgment or an abstract ... to the bureau [of motor vehicles].

   (e) Upon the failure of a court officer to comply with subsection (c), the officer is liable on the officer's official bond for a civil penalty of one hundred dollars ($100) accruing to the state, which may be recovered, together with the costs of the suit, in a civil action brought by the attorney general in the name of the state on relation of the attorney general. Each failure by an officer constitutes a separate cause of action.

itemized its total claim against Mr. Knight as follows:

| | |
|---|---|
| Excessive fines for traffic violations | $ 16,118.00 |
| Alternative sentencing | 718.50 |
| Contributions to Senior Citizens Center | 613.50 |
| SUBTOTAL | $ 17,449.50 |
| Failure to report convictions to BMV | 91,500.00 |
| TOTAL | $108,949.50 |

After discussing the contents of the audit report with Mr. Knight's attorney on July 29, 1991, the SBA certified the audit report to the Office of the Indiana Attorney General on September 20, 1991, charging Mr. Knight with a total liability to the SBA of $108,949.50. The certified audit report noted that the State Police had confiscated the court records on August 21, 1990 (less than two months prior to Judge Knight's resignation) and that criminal charges of theft and official misconduct had been filed against Mr. Knight in the Morgan County Superior Court on May 9, 1991. *Id.* at 8. On June 7, 1991, Mr. Knight had pleaded guilty to one count of theft, a Class D felony, and one count of official misconduct, a Class A misdemeanor. According to the audit report, under the terms of the plea agreement, Mr. Knight was required to pay $3,000 in restitution to the State of Indiana, and the prosecutor agreed not to file "any additional charges arising out of this same fact situation on which these charges are based."

On October 29, 1991, the Attorney General, on behalf of the State of Indiana, sent Mr. Knight a demand letter requiring that he pay his liability to the State. On November 7, 1991, Mr. Knight sought chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Indiana.

After filing its proof of claim in Mr. Knight's bankruptcy proceedings, the State filed a motion to dismiss his bankruptcy petition or to convert it to a chapter 7, on the ground that his unsecured debt exceeded the allowable amount under 11 U.S.C. § 109(e). Mr. Knight conceded then, as he does before us on appeal, that the $17,449.50 amount attributable to excessive fines, alternative sentencing and contributions was based on claims in existence and enforceable at the time he filed his bankruptcy petition. However, he contested, and continues to contest, the SBA's $91,500 "penalty debt" for failure to report the 915 convictions. He submits that the claim is contingent and unliquidated because no action was brought against him by the Attorney General to recover the penalty, and therefore no civil judgment has established a duty on his part to pay that debt.

### B. *Prior Judicial Determinations*

By order of October 16, 1992, the bankruptcy court dismissed Mr. Knight's chapter 13 petition. The court held that the $91,500 penalty debt arising from the unreported traffic violations constituted a noncontingent and liquidated debt on the date of the bankruptcy filing that, when added to his other unsecured debts, would make Mr. Knight ineligible for chapter 13 relief.

> Although the Debtor's liability for the Penalty Debt was not determined pre-petition by a civil lawsuit, all of the events needed to establish or give rise to liability did occur pre-petition. The Penalty Debt was noncontingent on the date of the bankruptcy filing, because the Audit Report states that the Debtor failed to report 915 traffic offenses, and because Indiana Code Section 9–4–7–9(e) imposed a fine of $100.00 for each failure to report a traffic offense. Similarly, the Penalty Debt was liquidated on the date of the bankruptcy filing. It is not necessary to use judgment or discretion in arriving at the amount of the Penalty Debt; simple arithmetic, *i.e.*, 915 times $100.00, suffices.

Bankr. R.9 at 6–7.

On March 4, 1994, the district court affirmed the decision of the bankruptcy court. It approved the court's application of the standards set out in *In re McGovern*, 122 B.R. 712 (Bankr.N.D.Ind.1989), for analyzing § 109(e) eligibility, because they "are the standards applied by the majority of courts that have addressed the issues of liquidated and noncontingent debt." *Id.* at 5. Accordingly, the district court then upheld the dis-

missal of Mr. Knight's chapter 13 petition. Mr. Knight has appealed that ruling.

## II

## DISCUSSION

On appeal Mr. Knight submits that the $91,500 penalty debt claimed by the SBA is a disputed debt, and also that the debt, if there is one, is contingent and unliquidated. Under his analysis of the SBA's claim, therefore, he meets the eligibility requirements of a chapter 13 debtor found in 11 U.S.C. § 109(e):

> Only an individual with regular income that owes, on the date of filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, ... may be a debtor under chapter 13 of this title.

Section 109(e) does not mention "disputed" debts, and neither the Bankruptcy Code nor the legislative history defines "contingent" and "liquidated." 1 William I. Norton, Jr., *Bankruptcy Law & Practice* § 18:12 (2d ed. 1994). In our consideration of each of Mr. Knight's submissions, therefore, we review de novo the conclusions of law of the bankruptcy court, later affirmed by the district court. *In re C & S Grain Co.*, 47 F.3d 233, 236 (7th Cir.1995); *In re Love*, 957 F.2d 1350, 1354 (7th Cir.1992).

### A.

█ Mr. Knight first disputes altogether that he owes a "debt" to the State of Indiana. He contends that a "debt," defined in the Bankruptcy Code at 11 U.S.C. § 101(12) as a "liability on a claim," is narrower than a "claim"; it is, instead, the obligation to pay under applicable law. Mr. Knight then asserts that he is under no obligation to pay the State. Because, under Mr. Knight's plea agreement, the State prosecutor agreed to forego any additional charges, Mr. Knight contends that he is no longer liable to the State. According to Mr. Knight, therefore, the first question before the court is whether this disputed claim properly can be included in calculating § 109(e) unsecured debt limitations.

Bankruptcy proceedings are seldom free of disputes about the claims filed against the debtor. Challenging the SBA claim filed in his bankruptcy case, Mr. Knight acknowledged that the Bankruptcy Code definition of "debt" is "liability on a claim," but then he misconstrued the relationship between debt and claim. In enacting the Bankruptcy Code, the Congress elaborated on that relationship when it defined "debt."

> The terms "debt" and "claim" are coextensive: a creditor has a "claim" against the debtor; the debtor owes a "debt" to the creditor.

S.Rep. No. 989, 95th Cong., 2d Sess. 23, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5809; H.R.Rep. No. 595, 95th Cong., 2d Sess. 310, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6267. The same breadth of definition is found in the Code's definition of a "claim": a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, ... *disputed,* undisputed, ...." 11 U.S.C. § 101(5)(A) (emphasis added). Thus the Code expressly recognizes that a disputed claim is nevertheless a claim. "[B]y defining a debt as a 'liability on a claim,' Congress gave debt the same broad meaning it gave claim." *In re Rosteck,* 899 F.2d 694, 696 (7th Cir.1990) (quoting *In re Energy Co-op, Inc.,* 832 F.2d 997, 1001 (7th Cir.1987)).

> By this broadest possible definition ... the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.

S.Rep. No. 595, 95th Cong., 2d Sess. 22, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808; H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 309, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266. In light of the virtual synonymy of "debt" and "claim," therefore, we conclude that a disputed claim is a debt to be included when calculating the § 109(e) requirements. *See* Norton, *Bankruptcy Law & Practice* § 18:12 at 18–43 ("Most courts have concluded ... that disputed debts are included in the calculation of the amount of debt of

eligibility purposes.");[3] *cf. Energy Co-op,* 832 F.2d at 1001 ("[W]hen a creditor has a claim against a debtor—even if the claim is unliquidated, unfixed, or contingent—the debtor has incurred a debt to the creditor.").

### B.

Mr. Knight's second claim is that the $915,000 penalty debt is unliquidated because it is not capable of ready determination: It is uncertain whether he is actually liable to the State, or what the amount of liability might be, because no judgment was rendered against him before he filed his chapter 13 petition. Mr. Knight supports his position by relying on *In re Hughes,* 98 B.R. 784 (Bankr.S.D.Ohio 1989). In that case the debtor had been charged with violating a state law prohibiting the rolling back of odometers of cars offered for sale. The bankruptcy court held that the debtor's debt to the State was unliquidated because the amount of damages could not be determined at the time of filing bankruptcy. In the same way, Mr. Knight submits, his own liability is unliquidated and thus is not properly includable in the § 109(e) debt analysis.

For two reasons we do not accept Mr. Knight's assertion that the State's claim is unliquidated. To the extent that this argument is simply a variation of his first contention that the claim is disputed, it has no merit. The fact that Mr. Knight contests this claim does not remove it as a claim under § 109(e) or render it unliquidated. *In re Jordan,* 166 B.R. 201, 202 (Bankr.D.Me. 1994) ("[T]he vast majority of courts have held that the existence of a dispute over either the underlying liability or the amount of a debt does not automatically render the debt either contingent or unliquidated."). More fundamentally, the cases uniformly provide the method for determining whether a debt is liquidated: "If the amount of a claim has been ascertained or can readily be calculated, it is liquidated—whether contested or not." Norton, *supra,* § 18:12 at 18–48. *See In re Fostvedt,* 823 F.2d 305, 306 (9th Cir.1987) ("[T]he question whether a debt is liquidated turns on whether it is subject to 'ready determination and precision in computation of the amount due.'") (citations omitted).[4]

Mr. Knight suggests that the State claim is not liquidated because it is not readily determinable. However, now that we have set aside the disputed nature of the claim, it is clear that the value of the claim is easily ascertainable. The claim against Mr. Knight was fixed in the State's demand letter, which Mr. Knight received before he filed his bankruptcy petition. In addition, under the terms of the state statute, the amount was easily calculated by multiplying 915 (the number of traffic violations not reported by Judge Knight) by $100.00 (the statutory fee assessed for failure to report each violation). Because the amount of liability is easily ascertainable, *Hughes* is not helpful. We agree with the bankruptcy and district courts that the State claim should be included in the § 109(e) debt calculation as a liquidated debt.

### C.

Mr. Knight next submits that the State claim against him is a "contingent"

---

**3.** Mr. Knight relies on *In re Lambert,* 43 B.R. 913 (Bankr.D.Utah 1984), which opines that "a debt whose liability or amount is disputed ... should not be included in the eligibility calculation." *Id.* at 915. We note that the Norton treatise identifies *Lambert* as the decision that does not follow the vast majority of holdings that include disputed debts in the § 109(e) calculus. *See* Norton, *supra,* § 18:12 at 18–43 n. 91. Our court, which has held that "debt" and "claim" are equivalents, *In re Energy Co-op,* 832 F.2d at 1001, is firmly with the majority. *Cf. In re Pulliam,* 90 B.R. 241, 244–46 (Bankr.N.D.Tex.1988) (analyzing *Lambert*'s erroneous definitions of "claim" and "debt").

**4.** The case law fully supports this method of determining whether a debt is liquidated. *See,* *e.g., McGovern,* 122 B.R. at 717 (holding debtor's obligation to creditor, though disputed, was liquidated because amount of liability was readily discernible by reference to an agreement or through simple mathematics); *In re Pulliam,* 90 B.R. 241, 244–46 (Bankr.N.D.Tex.1988) (finding claims liquidated because they were ascertainable from guaranty contracts and promissory notes); *In re Albano,* 55 B.R. 363, 368 (N.D.Ill. 1985) (holding that liquidation refers to the money value of a claim); *In re Williams,* 51 B.R. 249, 251 (Bankr.S.D.Ind.1984) (concluding that noncontingent and liquidated claim "should not be excluded from § 109(e) calculations merely because it is disputed").

debt, one that depends on a future event that may not even occur, to fix either its existence or its amount. In his view, a debt becomes noncontingent only when a triggering event (such as the entry of final judgment) occurs to make the claim immediately due. We cannot accept this argument. Mr. Knight's legal duty to pay and the amount of payment due were established by statute, and were easily calculable. The bankruptcy court correctly grounded its decision in the determination that a debt was noncontingent as long as all the events that gave rise to the debtor's liability had occurred prior to the filing of the bankruptcy petition. The bankruptcy court relied on *In re McGovern*, 122 B.R. 712 (Bankr.N.D.Ind.1989). In that case, McGovern was the executive director of the Counsel on Aging. The SBA field examiners had determined, after an audit, that McGovern had misappropriated more than $150,000 in public funds. Litigation against him had been initiated, but judgment had not been entered prior to McGovern's filing of a chapter 13 bankruptcy petition. The bankruptcy court determined that, as of the date of the bankruptcy filing, the misappropriation debt was both liquidated (because it could "be readily ascertained either by reference to an agreement or through simple mathematics," 122 B.R. at 715), and noncontingent (because "all of the allegations upon which the fact of liability is based relate to events that have already occurred," *id.* at 716).

> In broad terms, the concept of contingency involves the nature or origin of liability. More precisely, it relates to the time or circumstances under which the liability arises. "In this connection 'liability' does not mean the same as judgment or remedy, but only a condition of being obligated to answer for a claim."

*Id.* at 715 (quoting *In re Longhorn 1979–II Drilling Program*, 32 B.R. 923, 927 (Bankr. W.D.Okla.1983)).

In this case, as in *McGovern*, no future event needed to occur prior to the filing of the bankruptcy petition. Under Indiana

Code § 9–4–7–9(e), any court officer who fails to report a traffic conviction to the Indiana Bureau of Motor Vehicles within ten days after the judgment is rendered incurs a fine of $100 for each failure. Mr. Knight, as judge of the Mooresville Town Court, failed to report 915 traffic convictions to the BMV between January 1, 1987 and October 15, 1990, all prior to his bankruptcy petition.[5] Liability accrued immediately upon his failure to report. Therefore, as both the district and bankruptcy courts properly concluded, the $91,500 liability accruing to the State is a noncontingent debt within the meaning of § 109(e).

#### D.

■ Mr. Knight raises one last issue. He submits that the State has improperly attempted to impute civil liability on the basis of his criminal guilty plea. However, he asserts, under *Cromer v. Sefton*, 471 N.E.2d 700 (Ind.Ct.App.1984), a guilty plea is not conclusive in a civil proceeding and, in this case, should not carry any weight with regard to determining Mr. Knight's civil liability. Mr. Knight asserts that he has no legal duty to pay the penalty debt without a judgment against him. The State responds that Mr. Knight's civil liability was not eliminated by his criminal plea agreement.

■ Under Indiana law, the Attorney General is authorized to file civil matters; when the Attorney General represents a state agency like the SBA, the prosecutor does not have the authority to waive the state agency's rights in a plea agreement. *Cf. Payne v. State*, 531 N.E.2d 216, 218 (Ind. Ct.App.1988) (citing Ind.Code § 4–6–2–1). Therefore, the plea agreement signed by Mr. Knight does not waive the State's right to pursue a civil claim against him. We therefore agree with the State that the criminal plea agreement did not bind the State Attorney General's authority to bring a civil suit against Mr. Knight. More importantly, however, the statutory provision upon which the penalty debt is based (and which Mr. Knight does not challenge) clearly attaches liability

---

**5.** The misappropriations charged to Mr. Knight are also noncontingent, for the events necessary to trigger his liability occurred when the funds were taken. However, Mr. Knight does not challenge the misappropriation debts.

at the time the court officer fails to report. The penalty debt as defined by the Indiana Code is in no way tied to Mr. Knight's guilty plea. It is clear, therefore, that Mr. Knight's final argument is without merit.

## CONCLUSION

As a result of our de novo analysis of the eligibility requirements for chapter 13 relief under § 109(e) of the Bankruptcy Code, we conclude, as did the bankruptcy and district courts, that the State's claim is a noncontingent, liquidated unsecured debt that exceeds $100,000. The courts thus properly included the State's claim when computing Mr. Knight's eligibility for chapter 13 relief, and correctly found that his unsecured debts exceeded the debt ceiling on eligibility. We therefore affirm the dismissal of Mr. Knight's bankruptcy petition under chapter 13 of the Bankruptcy Code.

AFFIRMED