131 F.3d 295
 32 Collier Bankr.Cas.2d 38, Bankr. L. Rep. P 77,567
In re Salvatore J. MAZZEO, Debtor.
Salvatore J. MAZZEO, Plaintiff-Appellant,
v.
UNITED STATES of America and New York State, Defendants-Appellees.
New York State Department of Taxation and Finance, Creditor,
Marianne De Rosa, Trustee.
 Nos. 93, 94, Docket Nos. 96-5141(L), 96-5149.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 26, 1997.
Decided Dec. 3, 1997.
 
 Joseph J. Haspel, New City, NY (Stein Riso Haspel & Jacobs, New City, NY, on the brief), for Plaintiff-Appellant.
 Michelle B. O'Connor, Attorney, Tax Division, Department of Justice, Washington, DC (Loretta C. Argrett, Assistant Attorney General, Gary D. Gray, Attorney, Tax Division, Washington DC, Zachary W. Carter, United States Attorney, Brooklyn, NY, on the brief), for Defendant-Appellee United States.
 Steven U. Teitelbaum, Deputy Commissioner of Taxation & Finance, Kew Gardens, NY (Elizabeth Rosenblum, of counsel), filed a brief for Defendant-Appellee New York State.
 Before: KEARSE, McLAUGHLIN, and GODBOLD*, Circuit Judges.
 KEARSE, Circuit Judge.
 
 
 1
 Plaintiff Salvatore J. Mazzeo appeals from an order of the United States District Court for the Eastern District of New York, Thomas C. Platt, Judge, affirming an order of the United States Bankruptcy Court for the Eastern District of New York, Dorothy Eisenberg, Judge, which dismissed his petition filed under Chapter 13 of the Bankruptcy Code ("Code"), 11 U.S.C. § 1301 et seq. (1994). The district court ruled that Mazzeo's noncontingent, liquidated, unsecured debts included sums Mazzeo owed defendant United States with respect to his own income taxes and sums that Mazzeo's corporate employer had not paid defendant State of New York ("State") for employee withholding taxes, for which Mazzeo may be held responsible, and that the amount of those debts exceeded the statutory limit set forth in 11 U.S.C. § 109(e) (1994) for eligibility to proceed under Chapter 13. On appeal, Mazzeo contends that his debts to the defendant governments for withholding taxes are contingent and unliquidated, and that his noncontingent liquidated debts do not exceed the limit set by § 109(e). Finding no merit in his contentions, we affirm.
 
 I. BACKGROUND
 
 2
 Most of the pertinent facts are undisputed. During 1993 and 1994, Mazzeo was president of Westfield Financial Corporation ("Westfield" or the "company"); he was also, in the words of his attorney, a "significant" minority shareholder. During that period, Westfield filed quarterly returns with the Internal Revenue Service ("IRS") and the State's Department of Finance. On those returns, an employer is to report the amounts it has withheld from its employees' wages pursuant to its statutory obligations, see 26 U.S.C. § 3402 (requiring withholding for federal income tax); id. § 3102 (requiring withholding of tax imposed by Federal Insurance Contributions Act ("FICA")); N.Y. Tax Law § 671(a) (McKinney Supp.1997) (requiring withholding for State income tax). The employer is also required to state the extent, if any, to which it has remitted the withheld funds to the relevant federal or state taxing authority. The forms state that the signer, to the best of his knowledge and belief, certifies that the information shown on the return is "true, correct and complete."
 
 
 3
 Quarterly returns filed by Westfield with the State for 1993 and part of 1994 showed that the company had withheld various amounts for State income tax. For the four quarters of 1993 and for the first and third quarters of 1994, the total withheld was $404,492.88. (The record is silent with respect to the other two quarters of 1994.) Each return showed that there were no payments or credits toward the indebtedness, and it is undisputed that these moneys were never paid. The returns were signed by Mazzeo, who thereby certified their correctness.
 
 
 4
 Westfield also filed quarterly tax returns with the IRS. Its federal return for the first quarter of 1994, signed by Mazzeo under oath, showed the total taxes the company owed the federal government for that period, of which $340,724.93 constituted amounts withheld from employees' wages for federal income tax and FICA. It is undisputed that the withheld amounts were never paid to the United States.
 
 
 5
 If an employer does not pay withheld taxes as required, both federal and State law impose responsibility for payment on individuals who could have caused the employer to pay those taxes ("responsible-person" liability). The Internal Revenue Code imposes personal liability for such unremitted withholding taxes upon "[a]ny person required to collect, truthfully account for, and pay" the tax, who "willfully fails" to pay it. 26 U.S.C. § 6672(a). Under this section, the responsible individuals include all persons who are "connected closely enough with the business to prevent the [tax] default from occurring," Fiataruolo v. United States, 8 F.3d 930, 939 (2d Cir.1993) (internal quotation marks omitted); see Hochstein v. United States, 900 F.2d 543, 546 (2d Cir.1990) (all who "have the authority to direct the payment of corporate funds"), cert. denied, 504 U.S. 985, 112 S.Ct. 2967, 119 L.Ed.2d 587 (1992); and "[w]illfully" means simply that the nonpayment of the withheld funds to the government was "voluntary, conscious and intentional--as opposed to accidental," Kalb v. United States, 505 F.2d 506, 511 (2d Cir.1974) (internal quotation marks omitted), cert. denied, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). The State imposes similar individual liability for a company's failure to pay the withheld sums due the State. See N.Y. Tax Law § 685(g) (McKinney 1987) (imposing responsible-person liability); id. § 607(a) (McKinney 1987) (generally adopting federal income-tax-law interpretations for State income-tax-law provisions); Levin v. Gallman, 42 N.Y.2d 32, 33-34, 396 N.Y.S.2d 623, 624, 364 N.E.2d 1316 (1977) (federal definition of "willfully," as used in 26 U.S.C. § 6672, adopted with respect to N.Y. Tax Law § 685(g)).
 
 
 6
 On September 22, 1995, the State sent Mazzeo a notice of deficiency in the amount of $381,451.99 for Westfield's unpaid withholding taxes with respect to 1993 and the first and third quarters of 1994, asserting that Mazzeo, Westfield's president, was a responsible person with respect to those taxes. The State apparently arrived at that amount "by taking the amount of tax due on each of the withholding tax returns signed and filed by Mazzeo and adding these amounts together to arrive at a total tax due of $381,451.99." (State brief on appeal at 11.) Under New York law, the notice of deficiency, unless contested by the filing of a petition for redetermination, was to become an assessment after 90 days. See N.Y. Tax Law §§ 681(b), 689(b) (McKinney 1987). No payment need be made in order to file a petition for redetermination. See generally id. § 689(b). After the notice ripens into an assessment, the State is permitted, on 10-days' notice, to levy on and sell property of the taxpayer to satisfy the tax debt. See id. §§ 681(b), 692 (McKinney 1987). The last day of the 90-day period following the State's mailing of its September 1995 notice of deficiency to Mazzeo was December 21, 1995. On December 21, 1995, rather than filing an objection to the notice of deficiency, Mazzeo filed for protection under Chapter 13 of the Bankruptcy Code.
 
 
 7
 In his Chapter 13 petition, Mazzeo listed his total assets as $4,800 and his total liabilities as $237,000. As part of the latter sum, the petition indicated that Mazzeo had 66 unsecured creditors, including 63 nonpriority creditors, to whom liability totaling $137,000 was acknowledged, and three priority creditors, including the United States and the State. The petition listed the priority claims of the United States and the State at $50,000 each (numbers Mazzeo's attorney later stated had been "picked ... out of the hat"), and it characterized those claims as "disputed, contingent and unliquidated." The petition did not mention the State's claim for $381,451.99 or the notice of deficiency sent by the State three months earlier.
 
 
 8
 Defendants eventually filed their respective proofs of claim in bankruptcy court. The State asserted its claim of $381,451.99 as Mazzeo's responsible-person liability under § 685(g) with respect to the employee withholding taxes that Westfield had failed to pay the State. The United States initially asserted a secured claim of $118,657.28 for interest and penalties owed by Mazzeo for the late payment of his own 1984 income tax, the IRS having filed liens with respect to those debts in 1988 and 1993. In light of the representation in Mazzeo's petition that he had only $4,800 in assets, however, that claim was secured only to the extent of $4,800, leaving the United States with an unsecured claim for $113,857.28 with respect to Mazzeo's 1984 tax debt. The United States later amended its proof of claim to add a claim for a total of $989,491.22 in "estimated liability" based on Mazzeo's responsible-person liability under § 6672 for the amount of withheld federal taxes not paid by Westfield. Other claimants also filed proofs of claim that are not pertinent to this appeal.
 
 
 9
 Mazzeo commenced the present adversary proceeding pursuant to 11 U.S.C. §§ 505(a)(1) and 523(a)(1)(A) (1994) for a determination of, inter alia, the existence and extent of his responsible-person liability to the United States and the State. The complaint alleged that Mazzeo had not been involved in the financial aspects of Westfield and had been unaware of Westfield's failure to pay the withheld taxes until after Westfield had ceased operations. The complaint asserted that Mazzeo was unable, without the intervention of the bankruptcy court, to determine his responsible-person liability, if any.
 
 
 10
 The United States, joined eventually by the State, moved to dismiss Mazzeo's Chapter 13 petition and the adversary proceeding on the ground that his noncontingent, liquidated, unsecured debts exceeded $250,000, and therefore were above the ceiling provided by § 109(e) of the Code for a proceeding under Chapter 13. The United States argued that its claim for a total of more than $1 million was noncontingent and liquidated because all of the events giving rise to Mazzeo's liability had occurred prior to the filing of his bankruptcy petition, and the amount was ascertainable by a simple computation from amounts reported on Westfield's quarterly returns. It also pointed out that Westfield's federal return for the first quarter of 1994 had been signed by Mazzeo. The State argued similarly with respect to its $381,451.99 claim and pointed out that the quarterly returns filed with the State on Westfield's behalf had been signed by Mazzeo.
 
 
 11
 Mazzeo opposed the motion to dismiss, arguing that no federal or State assessment had ever been issued against him and that there had been no determination that he was a responsible person with respect to Westfield's withholding taxes. He contended that his responsible-person liability was therefore unliquidated and was contingent upon such a determination, and hence that the responsible-person debts asserted by defendants were not countable toward § 109(e)'s ceiling.
 
 
 12
 The bankruptcy court rejected Mazzeo's arguments and granted defendants' motion to dismiss the petition. The court ruled that Mazzeo's noncontingent, liquidated, unsecured debts, including the tax debts to the federal and State governments and certain other disputed claims, exceeded $250,000.
 
 
 13
 Mazzeo appealed to the district court, which, in a Memorandum and Order dated December 3, 1996, reported at 213 B.R. 625, affirmed without including in the tally the claims of creditors other than the United States and the State. The district court ruled that the State's withholding tax claim and the unsecured portion of the federal claim with respect to Mazzeo's own income tax were noncontingent and liquidated, and that the total of those claims alone was above the ceiling set by § 109(e). The court stated as follows:
 
 
 14
 For purposes of this decision, this Court need not address any claims other than the tax claims, the New York portion of which far exceeded the $250,000 amount and the IRS' additional $113,857.28 together with an additional $989,491.22 unsecured priority claim.
 
 
 15
 There was nothing contingent about the appellant's State tax liability at the time of filing of his petition, and the amount of this liability is liquidated. It is based upon the actual signed returns with the agreed upon amounts, under oath and filed by the appellant, as President of his corporate employer. No computation is required at all. The same is true of the federal tax liens for Mazzeo's unpaid prior taxes.
 
 
 16
 "Liquidated" denotes the ability to readily and precisely compute the amount due; the test is whether the amount "is capable of ascertainment by ... simple computation." In re Sylvester, 19 B.R. 671, 673 (9th Cir. BAP 1982). Several courts have determined that a claim is unliquidated only when a court cannot determine the amount of the claim without an evidentiary hearing....
 
 
 17
 "Contingent" denotes a debt for which liability depends upon the occurrence of some future event or condition which may never be fulfilled.... A claim is not contingent if it has come into existence and is capable of being enforced at the time the petition is filed....
 
 
 18
 ....
 
 
 19
 It is irrelevant that the appellant disputes the amount or the fact that he is a responsible person. Such disputes do not render the amount unliquidated or the responsible person determination contingent. There is nothing contingent or unliquidated about the $381,451.99 which he owed to the [State], or his liability for the debt on the date of the petition and there is nothing contingent or unliquidated about the $113,857.28 which appellant owed to the IRS or his liability therefor.
 
 
 20
 For the foregoing reasons, the Bankruptcy Court's decision dismissing the Chapter 13 proceeding in this case, must be and the same hereby is affirmed.
 
 
 21
 213 B.R. at 627 (footnote omitted). This appeal followed.
 
 II. DISCUSSION
 
 22
 On this appeal, Mazzeo pursues his contentions (1) that his liability under the responsible-person statutes is contingent because, he argues, such liability does not arise until an administrative assessment has been issued or until there has been a judicial finding as to the existence and extent of such liability; and (2) that his responsible-person liability is unliquidated, principally because he disputes it. Mazzeo also argues that his federal responsible-person liability is unliquidated because the United States described that liability as "[e]stimated." For the reasons stated in Part A below, we do not address this last argument; for the reasons stated in Part B, we conclude that Mazzeo's other contentions are without merit substantially for the reasons stated in the district court's opinion.
 
 A. The Scope of Our Review
 
 23
 An order of a district court functioning in its capacity as an appellate court in a bankruptcy case is subject to plenary review. See, e.g., In re Best Products Co., Inc., 68 F.3d 26, 29 (2d Cir.1995). Thus, we " 'independently review the factual determinations and legal conclusions of the bankruptcy court.' " In re Momentum Manufacturing Corp., 25 F.3d 1132, 1136 (2d Cir.1994) (quoting In re PCH Associates, 949 F.2d 585, 597 (2d Cir.1991)). Since we are reviewing the order of the district court, however, we will normally review the bankruptcy court's rulings only to the extent that the district court itself passed upon them.
 
 
 24
 In the present case, the bankruptcy court's ruling that Mazzeo is not eligible to proceed under Chapter 13 was based on that court's inclusion of (a) his responsible-person liability to the State, (b) his responsible-person liability to the federal government, (c) his liability for sums due with respect to his own federal income tax, and (d) his liability on disputed claims asserted by other creditors. The district court, however, did not consider claims other than those asserted by the governments. Further, it did not base its affirmance on Mazzeo's responsible-person liability to the United States. Rather, it found only that the $250,000 ceiling was exceeded by Mazzeo's responsible-person debt to the State ($381,451.99) and the unsecured portion of his debt to the federal government with respect to his own income taxes ($113,857.28). Because the State's claim alone exceeds the statutory maximum, and the federal claim with respect to Mazzeo's own income tax does not, and because, for the reasons discussed below, we conclude that the district court's ruling was correct, we limit our discussion to Mazzeo's debt to the State for responsible-person liability.
 
 
 25
 B. Mazzeo's Eligibility To Be a Debtor under Chapter 13
 
 
 26
 The criteria for eligibility to proceed under Chapter 13 are set forth in § 109(e) of the Code. That section provides, in pertinent part, that
 
 
 27
 [o]nly an individual ... that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 ... may be a debtor under chapter 13 of this title.
 
 
 28
 11 U.S.C. § 109(e). Neither "noncontingent" nor "liquidated" is defined in the Code. However, the Code's definitions of "debt" and of the key component of the definition of debt provide guidance.
 
 
 29
 The term "debt" is defined simply as "liability on a claim." 11 U.S.C. § 101(12). "Thus, the meaning of 'claim' is crucial to our analysis" of the meaning of "debt." Pennsylvania Department of Public Welfare v. Davenport, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130-31, 109 L.Ed.2d 588 (1990) ("Davenport "). The term "claim" is defined, to the extent pertinent here, as a
 
 
 30
 right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.
 
 
 31
 11 U.S.C. § 101(5)(A). See also id. § 101(5)(B) (including in the definition any "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment"). In light of the breadth of this definition of "claim," and consistent with the congressional intent evinced by its legislative history, see, e.g., S.Rep. No. 95-989 at 22 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5808 (describing the definition of "claim" as "th[e] broadest possible definition"), courts have characterized the term "claim" as, inter alia, "broad," Ohio v. Kovacs, 469 U.S. 274, 279, 105 S.Ct. 705, 707-08, 83 L.Ed.2d 649 (1985); id. at 280, 105 S.Ct. at 708 (discussing legislative history); "very broad," In re M. Frenville Co., Inc., 744 F.2d 332, 336 (3d Cir.1984), cert. denied, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985); "extremely broad[ ]," In re Kennise Diversified Corp., 34 B.R. 237, 244 n. 6 (Bankr.S.D.N.Y.1983); the "broadest possible," In re Vasu Fabrics, Inc., 39 B.R. 513, 517 (Bankr.S.D.N.Y.1984) (internal quotation marks omitted); In re Johns-Manville Corp., 36 B.R. 743, 754 n. 6 (Bankr.S.D.N.Y.1984); "all-encompassing," In re Barnett, 42 B.R. 254, 257 (Bankr.S.D.N.Y.1984); and "sufficiently broad to cover any possible obligation" to make payment, In re Smith Jones, Inc., 26 B.R. 289, 293 (Bankr.D.Minn.1982). We agree that the term "claim" is sufficiently broad to encompass any possible right to payment.
 
 
 32
 The Code's "definition [of 'debt' in terms of 'claim'] reveals Congress' intent that the meanings of 'debt' and 'claim' be coextensive." Davenport, 495 U.S. at 558, 110 S.Ct. at 2130-31; see In re Villarie, 648 F.2d 810, 812 (2d Cir.1981) (the terms claim and debt are "coterminous"). That interpretation is confirmed by legislative history stating that " '[t]he terms "debt" and "claim" are coextensive: a creditor has a "claim" against the debtor; the debtor owes a "debt" to the creditor.' " In re Knight, 55 F.3d 231, 234 (7th Cir.1995) (quoting S.Rep. No. 95-989 at 22 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5809; see H.R.Rep. No. 95-595 at 310 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6267).
 
 
 33
 As is apparent, Congress chose expansive language in both definitions.... For example, to the extent the phrase "right to payment" is modified in the statute, the modifying language ("whether or not such right is ...") reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a "claim" giving rise to a "debt."
 
 
 34
 Davenport, 495 U.S. at 562, 110 S.Ct. at 2132-33. In sum, by defining "claim" so broadly and by defining "debt" in terms of "claim," Congress has "adopt[ed] the 'broadest possible' definition of 'debt'." Id. at 564, 110 S.Ct. at 2133-34. In light of the Code's definitions, therefore, the term "debt" is sufficiently broad to cover any possible obligation to make payment, whether that obligation is liquidated or unliquidated, fixed or contingent, disputed or undisputed, and whether or not it is embodied in a judgment.
 
 
 35
 With respect to the meanings of the words "liquidated" and "noncontingent" as modifiers of "debts" in § 109(e), "[i]t is our duty 'to give effect, if possible, to every clause and word of [the] statute,' " United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 519-20, 99 L.Ed. 615 (1955) (quoting Montclair v. Ramsdell, 107 U.S. 147, 152, 2 S.Ct. 391, 394-95, 27 L.Ed. 431 (1883)); see Davenport, 495 U.S. at 562, 110 S.Ct. at 2132-33 ("Our cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment."). In fathoming those meanings, we note that in defining "claim," and, correspondingly, "debt," Congress used the terms "liquidated" and "contingent" along with other terms, and we can hardly assume that words in a series within the same definitional section were meant to be redundant. We infer, therefore, that Congress's juxtaposition in § 101(5)(A) of various terms, including "reduced to judgment," "liquidated," "contingent," and "disputed," indicates that each of those terms has a different meaning. We thus turn to the question of the proper interpretations of the terms "noncontingent" and "liquidated."
 
 
 36
 1. The meaning of "noncontingent"
 
 
 37
 It is generally agreed that a debt is contingent if it does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy. See, e.g., In re Knight, 55 F.3d at 236; In re Nicholes, 184 B.R. 82, 88 (9th Cir. BAP 1995); Brockenbrough v. Commissioner, 61 B.R. 685, 686-87 (W.D.Va.1986); In re All Media Properties, Inc., 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), aff'd, 646 F.2d 193 (5th Cir.1981); 2 L. King, Collier on Bankruptcy p 109.06[b] (15th ed. rev.1997).
 
 
 38
 A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event.... [A] creditor's claim is not contingent when the "triggering event" occurred prior to the filing of the chapter 13 petition.
 
 
 39
 Id. Thus, a contingent debt is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger ... liability." Brockenbrough v. Commissioner, 61 B.R. at 686.
 
 
 40
 We cannot view a debt as contingent merely because the debtor disputes the claim, for that would make the word "contingent," in the definition of "claim," redundant. See generally In re Nicholes, 184 B.R. at 89 ("even a bona fide dispute over liability for a claim does not make the debt contingent"); id. ("Debts of a corporation listed on an individual debtor's schedules are not rendered contingent simply because the individual debtor's liability for the corporation's debts is at issue."). Nor, by a future "event," do we refer to a judicial determination as to liability and relief, for a claim may be noncontingent even though it has not been reduced to judgment. See 11 U.S.C. § 101(5)(A). Although the creditor's ability to collect the sum due him may depend upon adjudication, that does not make the debt itself contingent. "In broad terms, the concept of contingency involves the nature or origin of liability. More precisely, it relates to the time or circumstances under which the liability arises. In this connection liability does not mean the same as judgment or remedy, but only a condition of being obligated to answer for a claim." In re Knight, 55 F.3d at 236 (internal quotation marks omitted).
 
 
 41
 A taxpayer's duty to pay taxes derives from statute and arises upon his nonpayment of the taxes when due. The obligation to pay is not contingent on any extrinsic event. Although the taxing body may be required to issue an assessment before it may enforce the tax liability through administrative, rather than judicial, procedures, the absence of such an assessment does not make the debtor's obligation contingent. See, e.g., Goldston v. United States, 104 F.3d 1198, 1200-01 (10th Cir.1997); see also In re Knight, 55 F.3d at 236 (where debtor's liability for prebankruptcy events was established by statute, debt was not contingent). Thus, in a case involving an individual debtor's liability to the federal government for a corporation's unpaid withholding taxes, the court in Brockenbrough v. Commissioner noted that
 
 
 42
 [t]he debtor's liability to the IRS was "triggered" by his failure to pay over the unemployment [sic ] taxes collected from the corporation's employees--an event which occurred before the filing of the bankruptcy petition, so that the debt was, therefore, not contingent at the filing of the petition.
 
 
 43
 61 B.R. at 686-87. The fact that the taxing authority may attempt to collect the withheld taxes from the corporation rather than from a responsible person does not make the debt contingent, for if the tax has not been paid, the statute makes the responsible person unconditionally liable. See, e.g., Bradley v. United States, 936 F.2d 707, 710 (2d Cir.1991) (personal liability is "separate and distinct"); Hochstein v. United States, 900 F.2d at 549; see also United States v. Huckabee Auto Co., 783 F.2d 1546, 1549 (11th Cir.1986) ("IRS need not pursue collection from the employer prior to assessing a responsible person under section 6672").
 
 
 44
 Mazzeo argues that "an individual can only be held liable for a corporation's fiduciary tax obligations upon the happening of two contingencies: 1) the failure of the corporation to pay its obligation, and 2) the determination that one is a 'responsible person' who, with knowledge, willfully failed to pay the fiduciary taxes such as to give rise to liability under § 6672...." (Mazzeo brief on appeal at 14 (emphasis added).) In support of his characterization of the responsible-person "determination" as a "contingenc[y]," he argues by analogy to In re Robertson, 143 B.R. 76 (Bankr.N.D.Tex.1992), in which the bankruptcy court dealt with an IRS tax penalty claim with respect to an allegedly "abusive tax shelter," id. at 78. The court held that that debt was contingent, stating that "liability ... is triggered only by the United States meeting its burden of proof under § 6703(a)(1) in a trial on the merits." Id. at 80. While it may be that the very different type of tax liability at issue in Robertson was unliquidated, we disagree with that court's interpretation of the meaning of "contingent." The existence of a dispute, and the prerequisite that the claimant establish its claim by a given quantum of proof, mean only that the claim is disputed, not that it is "contingent" in the sense of depending on the occurrence of an extrinsic event.
 
 
 45
 In the present case, Mazzeo's debt to the State was plainly noncontingent. Westfield withheld the requisite taxes from its employees' wages; Mazzeo, in signing the company's returns, certified that there were no payments or credits toward the indebtedness; and it is undisputed that the taxes were not paid. A responsible person's liability for unpaid withholding taxes is imposed by statute. Mazzeo, Westfield's president, either was a responsible person or he was not; but his status did not depend on any event that had not occurred prior to the time he filed his Chapter 13 petition. We conclude that his debt to the State, though disputed, was not contingent.
 
 
 46
 2. The meaning of "liquidated"
 
 
 47
 The terms "liquidated" and "unliquidated" generally refer to a claim's value (and the size of the corresponding debt) and the ease with which that value can be ascertained. See, e.g., United States v. Verdunn, 89 F.3d 799, 802 (11th Cir.1996); In re Knight, 55 F.3d at 235; In re Fostvedt, 823 F.2d 305, 306 (9th Cir.1987). "The concept of liquidation for purposes of section 109(e) relates only to the amount of liability not the existence of liability," United States v. Verdunn, 89 F.3d at 802 n. 10. If "the value of the claim is easily ascertainable," it is generally viewed as liquidated. In re Knight, 55 F.3d at 235. If that value depends instead on "a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated." United States v. Verdunn, 89 F.3d at 802.
 
 
 48
 Thus, the "courts have generally held that a debt is 'liquidated' ... where the claim is determinable by reference to an agreement or by a simple computation." 2 L. King, Collier on Bankruptcy p 109.06[c] (15th ed. rev.1997); see, e.g., In re Knight, 55 F.3d at 235 (debt is liquidated if its value "has been ascertained or can readily be calculated"); In re Fostvedt, 823 F.2d at 306 (debt is liquidated if it is "subject to ready determination and precision in computation of the amount due" (internal quotation marks omitted)); In re Nicholes, 184 B.R. at 89 ("The test for 'ready determination' is whether the amount due is fixed or certain or otherwise ascertainable by reference to an agreement or by a simple computation."). A claim plainly is liquidated if its amount is made certain "by operation of law." United States v. Verdunn, 89 F.3d at 802.
 
 
 49
 A few courts have held that the existence of a dispute, without more, is sufficient to render a claim unliquidated. See, e.g., In re Lambert, 43 B.R. 913, 921 (Bankr.D.Utah 1984) (stating that a dispute as to liability renders the entire debt unliquidated, and that a dispute as to a particular amount renders the disputed amount unliquidated); In re King, 9 B.R. 376, 378 (Bankr.D.Or.1981) (stating that "a debt is not liquidated if there is a substantial dispute regarding liability or amount"). The "overwhelming body of precedent," however, is to the contrary. United States v. Verdunn, 89 F.3d at 802 n. 9 ("Most courts have concluded ... that disputed debts are included in the calculation of the amount of debt for [Chapter 13] eligibility purposes.... [T]he vast majority of courts have held that the existence of a dispute over either the underlying liability or the amount of a debt does not automatically render the debt either contingent or unliquidated." (internal quotation marks omitted)). We agree with the majority position. The Code uses both "unliquidated" and "disputed" in its definition of "claim"; to rule that a claim (and hence the debt with which it is coextensive) is unliquidated whenever it is disputed would be to render the term "unliquidated" mere surplusage. Such an interpretation would also allow a debtor, simply by characterizing certain claims as disputed, to ensure his eligibility to proceed under Chapter 13 in circumstances that Congress plainly intended to exclude from that chapter. We conclude that effect must be given to both terms, and we agree with the Eleventh Circuit that "the concept of a liquidated debt relates to the amount of liability, not the existence of liability." United States v. Verdunn, 89 F.3d at 802.
 
 
 50
 In the present case, Mazzeo's putative debt to the State in the amount of at least $381,451.99 can readily be ascertained from statutory provisions and from the tax returns filed by Westfield. The amount of State withholding tax that Westfield should have paid and did not pay for 1993 and two quarters of 1994, as shown on the company's quarterly tax returns filed with the State, totaled $404,492.88. Under New York law, Mazzeo's liability is "equal to the total amount of the tax ... not ... paid over." N.Y. Tax Law § 685(g). The State's claim, based on those returns, is for $381,451.99. For purposes of these proceedings, the difference between those two figures is immaterial, for Westfield's returns revealed that the amount due and not paid was at least $381,451.99. We conclude that the State's claim was liquidated.
 
 CONCLUSION
 
 51
 In sum, where an unsecured claim, though disputed, is both noncontingent and liquidated, the debt that is coextensive with that claim must be included in the calculation that determines the debtor's Chapter 13 eligibility. Since no further event was required to trigger Mazzeo's responsible-person liability to the State, and since the amount of that liability was easily ascertainable from the filed tax returns, his dispute as to the applicability of the responsible-person statute to him does not make his debt to the State either contingent or unliquidated.
 
 
 52
 We have considered all of Mazzeo's arguments on this appeal and have found in them no basis for reversal. The order of the district court affirming the bankruptcy court's dismissal of the Chapter 13 petition is affirmed.
 
 
 
 *
 Honorable John C. Godbold, of the United States Court of Appeals for the Eleventh Circuit, sitting by designation