In re Edwin Andrew ADAMS, also known as Andy Adams, and Lynda Faye Adams, Debtors.

Christine Ann Kanke, Administrator of the Estate of Mark Anthony Schanbacher, Appellant,

v.

Edwin Andrew Adams and Lynda Faye Adams, Appellees.

BAP Nos. WY–06–057, WY–06–080.
Bankruptcy No. 05–22912.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Aug. 3, 2007.

Submitted on the briefs: *

Stephen R. Winship, Winship & Winship, P.C., Casper, WY, for Appellant.

Phillip T. Willoughby, Casper, WY, for Appellees.

Before BOHANON, CORNISH, and MICHAEL, Bankruptcy Judges.

BOHANON, Bankruptcy Judge.

For the reasons explained below, we reverse the bankruptcy court's order confirming the Debtors–Appellees' Chapter 13 plan and remand to the bankruptcy court for further proceedings in accordance with this opinion.

## I. Background

In 2002, Debtor Lynda Adams was appointed by a Wyoming state court as the personal representative for the probate estate of Mark Schanbacher ("Probate Estate"). She was later removed as personal representative for the Probate Estate and was replaced by Appellant Christine Ann Kanke. In February 2004, the Appellant initiated a suit against the Debtors in state court alleging that they had embezzled or stolen assets from the Probate Estate and sought to recover the value of those assets.

Shortly before the state court trial was to begin, the Debtors filed their Chapter 13 petition. In their schedules, the Debtors showed a debt to the Appellant as unliquidated and for an unknown amount. The schedules also showed other unsecured debts totaling $184,456.11.[1]

The Appellant originally filed a proof of claim for $237,000, but later amended it to $353,361.38. The amended claim was for $176,680.67, which the Appellant asserts is the value of the assets stolen or embezzled by the Debtors. The $176,680.67 was then doubled pursuant to Wyoming statutes that provide for the doubling of the value of assets embezzled by a personal representative. See Wyo. Stat. Ann. § 2–7–411 & § 2–7–413(b).[2] The Debtors objected to the Appellant's proof of claim, and the bankruptcy court abstained from determining the validity and amount of the claim in favor of the pending state court action.

---

[*] The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

[1.] None of these unsecured debts were listed as disputed, contingent, or unliquidated.

[2.] Wyo. Stat. Ann. § 4–7–411 provides as follows:

> If any person, before the granting of letters embezzles or alienates any of the monies, goods, chattels or effects of a decedent he is chargeable therewith and liable to an action by the personal representative of the estate for double the value of the property embezzled or alienated, for the benefit of the estate.

Wyo. Ann. § 2–7–411 (1977).

> Wyo. Stat. Ann. § 2–7–413(b) provides as follows in pertinent part:
> Any judgment recovered shall be for double the value of the property as assessed by the court, or for return of the property and damages in addition thereto equal to the value of the property.

Wyo. Stat. Ann. § 2–7–413(b) (1977).

The Appellant objected to the confirmation of the Debtors' third amended plan. The main thrust of her objection was that the Debtors were not eligible for relief under Chapter 13 since their non-contingent and liquidated unsecured debt exceeded the statutory threshold amount set in 11 U.S.C. § 109(e), which is $307,625.00.

Additionally, the Appellant objected to confirmation on grounds that the Debtors' plan violated 11 U.S.C. § 1325(b)(1)(B) because the Debtors did not submit the proceeds from the sale of their homestead as part of their disposable income available for administration of the plan. The Appellant also objected alleging the Debtors' plan was made in bad faith. The bankruptcy court overruled the Appellant's objections and confirmed the plan, holding that the Appellant's claim was unliquidated. The bankruptcy court stated it would later consider dismissal on grounds that the Debtors were ineligible under § 109(e) should the Appellant prevail in the state court action.

In addition to her objection to confirmation, the Appellant filed a motion to dismiss the petition on the grounds that the Debtors were ineligible for Chapter 13 relief because the Debtors' non-contingent and liquidated unsecured debts exceeded the § 109(e) threshold. The bankruptcy court denied the motion to dismiss.

The Appellant then appealed: (1) the bankruptcy court's confirmation of the Debtors' third amended plan, and (2) its denial of the motion to dismiss.

## II. Standard of Review

Determining whether a claim is liquidated involves interpretation of the Bankruptcy Code, which is a question of law, and is reviewed *de novo*. *See In re Slack*, 187 F.3d 1070, 1073 (9th Cir.1999). The de novo standard of review requires an independent determination of the issues with no special weight given to the bankruptcy court's decision. *See Morris v. St. John Nat'l Bank (In re Haberman)*, 347 B.R. 411, 414 (10th Cir. BAP 2006).

## III. Discussion

Although the Appellant raises many arguments in support of its objection to confirmation of the plan, it is necessary to only address the first: whether the bankruptcy court erred in confirming the third amended plan because the Debtors are ineligible for Chapter 13 relief as their non-contingent and liquidated unsecured debts exceed the § 109(e) threshold.[3]

Section 109(e) establishes who is eligible for relief under Chapter 13. Here, the pertinent portion provides that:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than [$307,625.00] ... may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e).

The term "liquidated" is not defined in the Bankruptcy Code. However, it is well-settled that whether a debt is "liquidated" turns on whether the amount is "readily determinable." A debt is considered non-contingent where all events that

---

**3.** We also reject the Debtors' argument that the Appellant's notice of appeal for the orders confirming the Debtors' Chapter 13 plan and overruling the Appellant's objection were untimely. Those orders were entered on May 19, 2006. (*See* Appellant's App. at 105–107.) The applicable notice of appeal was filed on May 30, 2006. (*See* Appellant's App. at 101.) Making the required allowance for the intervening Memorial Day holiday on May 29, 2006, the notice of appeal was filed within the required 10 days. *See* Fed. R. Bankr.P. 8002(a).

cause liability to arise occur pre-petition. It is only where some future event must transpire before liability arises that a debt is contingent. *See In re Reader,* 274 B.R. 893, 896 (Bankr.D.Colo.2002).

■ The amount of debt is readily determinable only if the process of determining the claim is fixed, certain, or otherwise determined by a specific standard. *See In re Barcal,* 213 B.R. 1008, 1014 (8th Cir. BAP 1997). On the other hand, if the value of the claim depends on a "future exercise of discretion, not restricted by specific criteria, the claim is unliquidated." *See Mazzeo v. United States (In re Mazzeo),* 131 F.3d 295, 304 (2d Cir.1997) (internal quotation marks omitted).

■ While a minority of courts hold otherwise, the overwhelming body of precedent holds that a dispute regarding liability on a claim is insufficient to render a claim unliquidated. *See id.* at 304–05 (citing *United States v. Verdunn,* 89 F.3d 799, 802 n. 9 (11th Cir.1996)) ("Most courts have concluded ... that disputed debts are included in the calculation of the amount of debt [for Chapter 13] eligibility purposes.... [T]he vast majority of courts have held that the existence of a dispute over either the underlying liability or the amount of a debt does not automatically render the debt either contingent or unliquidated."). *See also In re Slack,* 187 F.3d 1070, 1072 (9th Cir.1999) ("[W]e conclude that a debt can be liquidated even though liability is in dispute."); *In re Knight,* 55 F.3d 231, 234–35 (7th Cir.1995) (holding that if amount of claim can be determined, then debt is liquidated even though debtor may dispute liability); *In re De Jounghe,* 334 B.R. 760, 770 (1st Cir. BAP 2005) (the majority view is that the existence of a dispute over either the underlying liability or the amount of the debt does not automatically render a debt either "contingent" or "unliquidated"); and *In re Barcal,* 213

B.R. 1008, 1014 (8th Cir. BAP 1997) (holding a debt is liquidated if the process for determining the amount of the claim is "fixed, certain or otherwise determined by a specific standard" regardless of whether liability is disputed or the amount of evidence which may need to be considered to determine if there is liability). *Cf. In re Lambert,* 43 B.R. 913, 921 (Bankr.D.Utah 1984) (stating that dispute as to liability renders entire debt unliquidated); *In re King,* 9 B.R. 376, 378 (Bankr.D.Or.1981) (stating that "a debt is not liquidated if there is a substantial dispute regarding liability or amount").

■ The key factor for determining whether a debt is liquidated or unliquidated is whether the debt is subject to a simple mathematical computation or ascertainable by reference to an agreement. *See In re Barcal,* 213 B.R. at 1014.

A prime example of application of this concept is found in *In re Reader.* Indeed, that case bears a striking similarity to the case at hand. There, the debtor allegedly misappropriated funds from her deceased father's estate while acting as conservator. The bankruptcy court granted a motion to dismiss the petition on grounds that the debtor was ineligible pursuant to § 109(e) because the amount of the debt owed for misappropriated estate funds was readily determinable by reference to a special master's report. That report did not decide the validity of the creditor's claim but instead looked at the appropriate records to quantify the questionable transactions by the debtor as conservator. *See In re Reader,* 274 B.R. 893, 897 (Bankr.D.Colo. 2002). *See also In re Knight,* 55 F.3d 231, 235 (7th Cir.1995) (concluding that amount of debt was easily calculated by reference to a demand letter and by application of state statute); *In re Krupka,* 317 B.R. 432, 437 (Bankr.D.Colo.2004) (holding that debtor's non-contingent and liquidated

debts exceeded § 109(e) threshold for eligibility under Chapter 13 where state statute allowed for quantification by requiring the trebling of actual damages).

We believe that the majority approach is the better reasoned one. Otherwise, a debtor, simply by characterizing certain claims as disputed, could ensure his eligibility to proceed under Chapter 13 in circumstances that Congress intended to exclude from that chapter. *See Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 305 (2d Cir.1997). Additionally, since limited eligibility is intended to implement the expeditious administration of Chapter 13 reorganizations, requiring the bankruptcy court to decide the merits of disputed claims before determining eligibility would impose an impractical burden and delay upon the Chapter 13 court. *See In re Barcal*, 213 B.R. at 1015. Further, to allow the debtor a full determination on the merits of a disputed claim by the bankruptcy court would permit and encourage improper forum shopping. *See id.* at 1016.

■ In considering eligibility, it is appropriate for a court to "rely primarily upon a debtor's schedules and proofs of claim, checking only to see if these documents were filed in good faith." *Barcal,* 213 B.R. at 1015 (citing *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 756 (6th Cir.1985)). "In so doing, however, the court should neither place total reliance upon a debtor's characterization of a debt nor rely unquestionably on a creditor's proof of claim, for to do so would place eligibility in control of either the debtor or the creditor." *Barcal,* 213 B.R. at 1015 (citing *In re Madison,* 168 B.R. 986, 989 (D.Haw.1994)). Therefore, at a hearing on eligibility, the court should "canvass and review the debtor's schedules and proofs of claim, as well as other evidence offered by a debtor or the creditor to decide only whether the good

faith, facial amount of the debtor's liquidated and non-contingent debts exceed statutory limits." *Barcal,* 213 B.R. at 1015.

Nevertheless, if the bankruptcy court's duty is to search the record, then it is still possible to conclude that the claim in this case is at least partially liquidated.

■ At the confirmation hearing, the Appellant made a proffer of evidence, uncontested by the Debtors and accepted by the bankruptcy court, that reflected the testimony of Edward T. Hager, a certified public accountant, regarding his investigation into the Probate Estate's financial records and his resulting report quantifying damages caused by the Debtors. (*See* Appellant's App. at 75–82.) Hager's report and supporting documents are attached as exhibits to the Appellant's amended proof of claim. (*See* Appellant's App. at 153–328.) The proffer and Hager's report show a loss to the Probate Estate of $124,297.73, which includes a setoff for expenses by the Debtors of $21,750.48. Hager's report shows losses for: (a) funds deposited into the Debtors' personal bank account ($11,004.97); (b) sales identified by Mrs. Adams where funds were not fully accounted for ($3,183.24); (c) estate assets not accounted for ($3,102.00); (d) transfers from decedent's business to Debtors' personal account ($44,800.00); (e) rental income from decedent's residence ($8,385.00); (f) loss of income related to decedent's business ($68,573.00); and (g) loss of value of decedent's Chevrolet Tahoe due to personal use by Debtors ($7,000). (*See* Appellant's App. at 209.)

These items, with the exception of (f), are easily quantified by Hager's report and supporting documents. A simple mathematical computation is all that is needed to fix an amount, or put another way, they are readily determinable. Therefore, those items are properly deemed liqui-

dated for purposes of deciding whether the Debtors are eligible for Chapter 13 relief under § 109(e).

However, at least one item of loss to the Probate Estate—which is a large dollar amount ($68,573.00)—is not liquidated. This loss is attributed to Mrs. Adams' breach of fiduciary duty in connection with a business owned by the Probate Estate. The decedent had owned and operated a company named Shanco, Inc., which sold garage door lubricant. In her capacity as personal representative, Mrs. Adams managed Shanco, Inc., but ultimately established a competing business named Kenco, Inc., which also sold garage door lubricant. She then marketed her garage door lubricant to Shanco's customers who, because of her management of that company, were under the impression that they were dealing with Shanco when in fact they were dealing with Kenco. (*See* Appellant's App. at 301–306.) Hager quantified the "loss of business value" from Adams's mismanagement of Shanco, Inc. and her breach of fiduciary duty to the Estate at $68,573. The amount of this part of the Appellant's claim, however, is not "readily determinable" because it is subject to a future exercise of discretion by the trier of fact. *See In re Salazar*, 348 B.R. 559, 569 (Bankr.D.Colo.2006) (noting that tort claims asserted by creditors were unliquidated where damages were subject to the exercise of discretion by the trier of fact). Therefore, it is not properly included in calculating the Debtors' liquidated debts.

The Appellant's uncontested proffer also included a calculation of damages for misappropriation of trade information under state law. This claim is based upon Mrs. Adams' opening her own business using the decedent's unique product. The Appellant asserts that these damages are calculated at $18,644.83, which is based upon the sales and bank records of Mrs. Adams' business. (*See* Appellant's App. at 78 & 127.) Because this amount is also readily determinable by simply adding the deposits made from Mrs. Adams' business, it is also properly included in deciding the Debtors' eligibility for Chapter 13 relief.

The Appellant also correctly points out these damages could be doubled under Wyoming law. *See* Wyo. Stat. Ann. §§ 2–7–411 & 2–7–413(b) (1977). Because such a figure is easily calculated by multiplying by two, we have no difficulty concluding that it is "readily determinable." *See In re Krupka*, 317 B.R. 432, 439–440 (Bankr. D.Colo.2004) (applying Colorado statute that provided for treble damages; holding that such treble damages are "readily determinable").

Our analysis thus far includes the amount calculated by Hager's report, plus the $18,644.83 outlined above, minus the amount attributed to loss of income related to decedent's business. A breakdown of the figures looks like this:

| | |
|---|---|
| Total amount from Hager's report | $124,000.00 |
| Total amount for damages for misappropriation of trade secrets | + $ 18,644.83 |
| **Sub-total** | $142,644.83 |
| Loss of value to Shanco | – $ 68,573.00 |
| **Grand Total** | $ 74,071.83 |

When the resulting $74,071.83 is doubled per state law, the new total is $148,143.66. Adding the $148,143.66 to the $184,456.11 listed in the schedules as non-contingent and liquidated unsecured debts gives us the sum of $332,599.77, which well exceeds the § 109(e) threshold of $307,625.00. Thus, the Debtors are not eligible for relief under Chapter 13.[4]

---

4. The Appellant's uncontested proffer also included other damages that we need not discuss here since those already discussed render the Debtors ineligible for Chapter 13 relief.

## IV.  Conclusion

For the reasons stated above, we hereby REVERSE the bankruptcy court and RE-MAND this matter to the bankruptcy court for further proceedings in accordance with this Opinion.