**In re William A. BAIRD p/d/b/a The Baird Company, Debtor.**

**Bankruptcy No. 97–06667–3P3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 7, 1999.

Christopher Demetros, Jacksonville, FL, for Debtor.

S. Hunter Malin, Jacksonville, FL, for International Distribution Systems, Inc.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the Amended Motion to Dismiss filed by International Distribution Systems, Inc. ("IDS") (Doc. 132.) Hearings were conducted on October 8, 1998, and October 15, 1998. IDS contends that William A. Baird's ("Debtor") Chapter 13 case should be dismissed because he is not an individual with regular income, and his unsecured debts exceed the eligibility requirements for relief under 11 U.S.C.

§ 109(e). Upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. IDS is a trade association that negotiates freight prices for its various members. In promoting this endeavor, IDS contacted Debtor, an officer and controlling shareholder of Total Logistics Management Services, Inc. ("TLM") to discuss transportation discounts. (IDS' Br. at 1.)

2. On or about January 25, 1994, IDS and TLM entered into a supplier agreement, which incorporated prior correspondence, that provided TLM would audit freight bills, and charge and act as liaison in negotiations with carriers for IDS' members. (IDS' Ex. 6, 7.)

3. TLM performed its responsibilities to IDS for two years.

4. Over time, TLM did not perform its obligations under the supplier contract.

5. IDS members paid $86,020.49 to TLM which was not forwarded to motor carriers to pay IDS members' invoices. (IDS' Ex. 23, 53–67.)

6. Moreover, the supplier contract called for TLM to pay a cost justified discount of five percent (5%) of the net invoiced amount of all TLM billings to IDS distributors, with eighty percent (80%) of the rebate to be paid to IDS and twenty percent (20%) to TLM. (IDS' Ex. 6.)

7. The evidence shows that TLM did not forward any portion of the 1995 fourth quarter rebate check for $13,232.89 to IDS. IDS was entitled to $10,586.32 of that amount. (IDS' Ex. 8.) Thus, the total unpaid sums owed to IDS by TLM was $96,606.81. (IDS' Exs. 8, 67.)

8. IDS argues Debtor fraudulently converted money received from IDS' members for his own use.

9. On or about July 31, 1997, IDS filed a state court complaint against TLM and the Debtor individually. The complaint alleged, among other things, conversion, breach of contract, fraud and civil theft. IDS contends

Debtor owes it $96,606.81 with a trebling of damages to $289,820.40 pursuant to Florida's civil theft statute.

10. On September 2, 1997, TLM filed a petition under Chapter 7 of the Bankruptcy Code.

11. On September 2, 1997, Debtor filed a Chapter 13 petition for relief in this Court.

12. Debtor's Plan calls for payments of $93.98 per month for thirty-six (36) months. (Doc. 13.) Debtor lists in his Schedule E an unsecured priority claim by the Internal Revenue Service in the amount of $2,100.00. Debtor lists in his Schedule F total unsecured claims of $149,079.32. Debtor's Schedule F indicates the portion of the unsecured claim attributable to IDS is in the form of a disputed claim in the amount of $83,000.00 for freight charges associated with the operation of TLM. (Docs. 11, 13.) Debtor argues that this is a corporate debt, and thus, he is not personally liable for it. Although IDS' state court treble damage claim has not been litigated, nor brought to judgment in a court of law, IDS contends this amount is a liquidated, noncontingent, unsecured debt, and thus should be included in this Court's 11 U.S.C. § 109(e) eligibility calculation.

13. On June 5, 1998, Debtor lost his employment and has not yet sought unemployment benefits. (IDS' Ex. 1, at 4, 149). On June 24, 1998, Debtor had a severe stroke and has remained hospitalized throughout this case. (Debtor's Br. at 5.) Subsequent to Debtor's failing health, Debtor's son has timely paid all plan payments. (*Id.*)

### CONCLUSIONS OF LAW

IDS raises three arguments in its Memorandum of Law in Support of its Amended Motion to Dismiss. (IDS' Br. at 1.) First, IDS claims Debtor is personally liable to it because Debtor participated in and had knowledge of TLM's improper acts.[1] Second, IDS asserts that Debtor is not eligible for relief under Chapter 13 because he is not an individual with regular income since Debtor's present sole source of income for funding the plan is a voluntary contribution from his son. Third, IDS argues that Debtor is not eligible for Chapter 13 relief because on the date of filing for bankruptcy protection his noncontingent, liquidated, unsecured debts exceeded $250,000.00. Debtor disputes these contentions.

### A. Eligibility to be a Debtor under Chapter 13

■ The first issue this Court will address is whether or not the Debtor is an "individual with regular income," of the kind eligible to file for Chapter 13 relief. Bankruptcy Code § 109(e) provides "only an individual with regular income ... may be a debtor under Chapter 13 of this title." 11 U.S.C. § 109(e) (1998). Section 101(30) of the Code further defines "individual with regular income" to mean "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title." 11 U.S.C. § 101(30) (1998). It is the debtor's burden to demonstrate that he or she has such regular income. *In re Norwood,* 178 B.R. 683, 691 (Bankr.E.D.Pa.1995) (incumbent on debtor to establish income is sufficiently stable and regular); *In re Sassower,* 76 B.R. 957, 961 (Bankr.S.D.N.Y.1987) (debtor must produce credible evidence of existence of a regular income).

■ The Code does not define the word "income" within § 101(30). However, it is widely recognized that Congress intended the term "regular income," as used in sections 101(30) and 109(e), to be interpreted broadly. *In re Hanlin,* 211 B.R. 147, 148 (Bankr.W.D.N.Y.1997); *In re Antoine,* 208 B.R. 17, 19 (Bankr.E.D.N.Y.1997) (finding debtor's income sufficiently stable and regular based on non-debtor wife's sole contributions); *In re Varian,* 91 B.R. 653, 654 (Bankr.D.Conn.1988) (citing H.R.REP. NO. 595, 95th Cong., 1st Sess. 311–12 (1977), *reprinted in* 1978 U.S.CODE CONG. & ADMIN. NEWS 5963, 6268–69; S.REP. NO. 989, 95th Cong., 2d Sess. 24 (1978), *reprinted in* 1978 U.S.CODE CONG. & ADMIN. NEWS 5787, 5810). The legislative history of § 101(30) is unusually clear and indicates

---

1. The Court declines to address this issue as it is not pertinent to IDS' Motion to Dismiss in light of the Court's Findings of Fact and Conclusions of Law.

that Congress intended to expand and broadly define "individual with regular income" to include funding from diverse and nontraditional sources. S.REP. No. 95–989, at 24 (1978); *see* H.REP. No. 95–595, at 311–12 (1977); *Bibb County Dept of Family & Children Serv. v. Hope (In re Hammonds)*, 729 F.2d 1391, 1393 (11th Cir.1984) (stating "purpose of term 'individual with regular income' is to permit almost any individual with regular income to ... have approved a reasonable plan for debt repayment based on that individual's exact circumstances."); *In re Campbell*, 38 B.R. at 195 (where family member jointly liable on debt, that nondebtor individual's income found to be sufficiently stable and regular to conditionally confirm plan); *In re Murray*, 199 B.R. 165 (Bankr. M.D.Tenn.1996) (noting social security benefits can be regular income); *In re Tucker*, 34 B.R. 257 (Bankr.W.D.Okla.1983) (noting disability benefits can be regular income); *In re Cole*, 3 B.R. at 348 (holding odd jobs can be source of regular income); *In re Sigfrid*, 161 B.R. 220 (Bankr.D.Minn.1993) (nonfiling spouse's income can be regular income); *In re Rowe*, 110 B.R. 712, 718 (Bankr.E.D.Pa. 1990) (finding debtor's receipt of $200.00 a month from her son constituted stable and regular income).

■ Therefore, the test for "regular income" is not the type or source of income, but rather its regularity and stability. *In re Varian*, 91 B.R. at 654 (citing *In re Campbell*, 38 B.R. 193, 195 (Bankr.E.D.N.Y.1984)). As such, courts have held that an individual with sources of income other than wages is qualified to propose a Chapter 13 plan if "the flow of funds is shown to be sufficiently regular and stable to enable payments to be made under a plan." *In re Varian*, 91 B.R. at 654 (husband's commitment to pay $230.00 per month to fund plan is found to be "regular income" to debtor wife); *In re Ellenburg*, 89 B.R. 258, 260 (Bankr.N.D.Ga.1988) (finding debtor's receipt of $500.00 per month for providing bookkeeping services to husband constitutes sufficient regular income). Preliminarily, the Court notes that § 109(e) does not state the date that the regular income requirement is determined. *See* 11 U.S.C. § 109(e). The most consistent view is that the presence of regular income should be the date of the petition. However, it has been held that regular income should be determined at the time most favorable for the debtor, not necessarily the date of the petition. *Matter of Moore (In re Moore)*, 17 B.R. 551 (Bankr.M.D.Fla.1982). Still other courts have found that the regular income should be determined at the time of confirmation. *See In re Cole*, 3 B.R. 346 (Bankr. S.D.W.Va.1980) (determine whether debtor has regular income at time of confirmation; determine amount of debt as of date of filing); *In re Lilley*, 29 B.R. 442 (1st Cir. BAP 1983); *see also* 11 U.S.C. § 1325(a)(1), (6) (1998). This Court is not limited to the date of the filing in order to determine what constitutes regular income, rather it may view the circumstances prospectively. *In re Varian*, 91 B.R. at 654. If a debtor is not eligible for relief by reason of unstable or irregular income at the time of filing, he is entitled to have that aspect of eligibility determined at a more favorable time after filing. *In re Cole*, 3 B.R. at 348. To conclude otherwise would unnecessarily require a debtor to re-file and pay a second fee, simply to recognize as fact, the adequacy of income which the Court must ascertain for confirmation anyway. *Id.;* 11 U.S.C. § 1325(a)(1), (6) (1998).

■ The Court will first view Debtor's income at the time the petition was filed. Debtor's Schedule I–Current Income of Individual Debtors-indicates current monthly gross wages of $4,166.67, with a net take home of $3,254.27. (Doc. 11) Debtor's Schedule I lists his occupation as Director of Logistics for Freight Solutions, Inc. (*Id.*) Further, Debtor testified in his deposition that this was in fact his position and that he earned $50,000.00 per year. (IDS' Ex. 1 at 29–30.) IDS did not offer credible evidence that Debtor was neither employed with this business nor receiving the compensation listed in the Schedules. It is abundantly clear from the evidence presented that at the time the petition was filed, Debtor's job provided "regular income," even when viewed in the narrowest definition of income for § 101(30) purposes.

However, IDS argues that because Debtor's Schedule J shows his monthly expenses (without considering plan payment) exceeds his monthly income, Debtor does not have sufficient regular income to qualify for Chapter 13 relief. (Doc. 11, IDS' Ex. 2.) However, the Court will resist turning this motion to dismiss into a hearing on confirmation of a plan. Further, this Court does not find the evidence contained in the Schedules to be conclusive of a lack of sufficient income to fund the plan. The real test is whether the Debtor has the ability to make the requisite payments under the plan. The evidence shows that the Debtor has made all plan payments, and therefore, the Court finds the Debtor has such ability.

In the alternative, IDS argues that because Debtor has not been employed since June 4, 1998, he has not received regular income for the past five months. (IDS' Ex. 1 at 4, 149) IDS contends that even though Debtor's son has made the payments during the months Debtor has been unemployed, the son has no legal obligation to continue the payments, therefore, the income is not "regular" within the meaning of 11 U.S.C. § 109(e). However, this Court is of the opinion that payments due purely to "the generosity of a close relative" may fall within the category of stable and regular income. *In re Rowe*, 110 B.R. at 719 (citing *Cohen v. Werner (In re Cohen)*, 13 B.R. 350, 356–357 (Bankr.E.D.N.Y.1981)); *cf. In re Cheatham*, 91 B.R. 377, 380–81 (E.D.N.C.1988) (plan determined feasible even though Chapter 11 farmer-debtor's sole source of income was from his family). As stated by the court in *Cohen:*

> When Congress extended Chapter 13 to include other than wage earners, it indicated at the same time that it wished to take a liberal view of the income from which Chapter 13 payments could be made. Among the possible sources mentioned in the legislative history are welfare payments. (citation omitted). If the generosity of the Government can be considered in determining the income available for meeting Chapter 13 obligations, there seems no

good reason for excluding the generosity of a close relative.

13 B.R. at 356.

Moreover, simply because there is no legal obligation to continue the payments hardly proves absence of income for § 101(30) purposes. For example, in most states, in the absence of a contrary contract or overriding public policy, an employer has the right to fire an employee at will and without cause. *In re Murphy*, 226 B.R. 601, 606 (Bankr. M.D.Tenn.1998). However, no one would seriously argue that the money a debtor expects to receive from at-will employment is not income for § 101(30) purposes just because the debtor has no legal right to continued employment. *In re Murphy*, 226 B.R. at 606.

The Chapter 13 Trustee's representative testified that the plan payments were current and consistent. (Debtor's Br. at 5, IDS' Mem. at 7.) To refuse to allow the Debtor the chance to reorganize because of the absence of a particular source of income which a court might deem "stable and regular" would inject unwritten and improper elements into the Chapter 13 eligibility equation. The Court therefore concludes that the Trustee's consistent receipt of the plan payments from Debtor's son for the past five months is an acceptable source of "stable and regular" income to render Debtor an "individual with regular income" for purposes of 11 U.S.C. § 109(e). Based on the foregoing, Debtor has sufficiently demonstrated that he qualifies as an "individual with regular income" both at the time the petition was filed and the time this motion was heard.

**B. 11 U.S.C. § 109(e); Limit on Noncontingent, Liquidated, Unsecured Debt**

IDS further contends that its state court claims for breach of contract, conversion and civil theft, despite not being litigated or brought to judgment, are liquidated and noncontingent. IDS asserts the state court claim is noncontingent because liability attached when Debtor knowingly participated in using IDS funds for unauthorized purposes, which occurred almost eighteen months before the Debtor filed for bankruptcy. Moreover, IDS claims that since Florida's civil theft statute mandates treble dam-

ages, the amount of liability is capable of ready determination, and thus, is liquidated.

■ Thus, the issue for the Court to address is whether or not the state court claim of IDS should be added to the sum of Debtor's noncontingent, liquidated, unsecured debt for purposes of determining Chapter 13 eligibility pursuant to 11 U.S.C. § 109(e). Section 109(e)[2] provides, in pertinent part, that:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000 ... may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e) (1998). IDS, as movant, bears the burden of proof to demonstrate to the Court, by a preponderance of the evidence, that Debtor does not comply within the $250,000 debt limit. *United States v. May*, 211 B.R. 991, 997 (M.D.Fla.1997).

A debtor's debts rather than the "claims" against that debtor are liquidated and noncontingent.

> "[D]ebt" was used because Congress intended a Chapter 13 Debtor's eligibility to rest upon either (1) the actual obligation to pay as it exists in the contemplation of applicable law or (2) the obligation to pay as asserted to the court by the debtor in its schedules or otherwise. The term "claim" was avoided because Congress did not wish the Section 109(e) eligibility determination for Chapter 13 debtors to be predicated upon the mere demands of creditors.

*In re Lambert*, 43 B.R. 913, 919 (Bankr. D.Utah 1984). While not every dispute by a debtor will cause the claim to become unliquidated, the Court finds such a result justified in the instant case.

Several courts have emphasized the terms "liquidated," "contingent," and "claim." However, this Court deems the word "owe" most important in its § 109(e) analysis of the present case. *In re Nottingham*, No. 98–02013–3F3 Doc. 33 (Bankr.M.D.Fla. Aug. 24, 1998). Section 109(e) states that "only an

individual with regular income that *owes* ... noncontingent, liquidated, unsecured debts of less than $250,000 ...." will not be eligible to be a Chapter 13 debtor. *Id.* (emphasis in original). There are various situations that may exist in which claims may be filed that a debtor does not "owe." *Id.* For instance, creditors may file duplicate or triplicate claims, or as in the present case may allege personal liability and treble damages in a lawsuit. Three identical $100,000 claims, or a lawsuit not brought to final judgment, with a $100,000 base claim alleging treble damages would make a debtor ineligible if these claims were deemed liquidated.

However, the debtor would not actually "owe" the total sums of these monies. Section 109(e) speaks of monies "owed"—not claims. *Id.*

### 1. Unliquidated Versus Liquidated Debt

■ A liquidated debt is one which has been made certain by operation of law or by agreement of the parties. *United States v. Verdunn*, 89 F.3d 799, 802 (11th Cir.1996). Therefore, the concept of liquidated debt means a debt where it is certain what and how much is "owed." *Id.* "If the amount of the debt is dependent, however, upon a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated."

In *Verdunn*, the Eleventh Circuit recently held that a debtor's tax liabilities and penalties contained in a statutory notice and deficiency are liquidated, unsecured debts. 89 F.3d at 803. The debtor received a deficiency notice from the Internal Revenue Service ("IRS") and the notice made the amount "owed" to the IRS easily ascertainable because "it was computed through the application of fixed legal standards set forth in the tax code." *Id.*

The court relied on the Seventh Circuit's decision in *In re Knight*, 55 F.3d 231 (7th Cir.1995). *Knight* involved a town court judge, who was required by law, but failed to, report a total of 915 traffic convictions to the Indiana Bureau of Motor Vehicles. *Id.* at 235. Consequently, the state attorney gener-

---

**2.** Although the debt limits have been amended, they are not applicable to this case.

al issued a demand letter for payment of a civil penalty at a cost of $91,500 ($100 per violation). *Id.* Both the *Verdunn* and *Knight* debtors disputed the amount "owed" and asserted that the debt should not be included in calculation of their noncontingent, liquidated, unsecured debt limit under § 109(e). In *Knight,* the court held that the amount owed was liquid because the amount was fixed in the state's demand letter and was calculated from the relevant state statute. *Id.* In *Verdunn,* in also concluding the debt liquid, the court found indistinguishable the state's demand letter in *Knight* with the IRS statutory notice of deficiency, and the relevant state statute in *Knight* from the established IRS code criteria used to calculate Verdunn's tax debt. *Verdunn,* 89 F.3d at 803. However, unlike the present case, the claims in *Verdunn* and *Knight* required no future event to establish the amount "owed." The case at bar requires a judicial determination to establish the amounts "owed," if any, by Debtor to IDS.

In *Verdunn* and *Knight,* the amount of liability, albeit disputed, had been established respectively by the issuance of the statutory notice of deficiency and the civil fine. In the present case, there is an unresolved question of the extent of Debtor's liability, if any, on IDS' state court claim. IDS' claim was not agreed upon nor fixed by operation of law. Debtor disputes both the amount and the underlying liability. Presently, Debtor is not obligated to pay IDS any amount. IDS argues that because the debt is easily ascertainable, it should be considered liquidated. However, for a debt to be easily ascertainable it must be capable of ready determination from a simple hearing, rather than an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability. *May,* 211 B.R. at 996 (affirming bankruptcy court's decision holding pending tax court litigation involving interest deductions not included in debtors' sum of undisputed, noncontingent, liquidated debt). Since the disputed amount of liability is related to on-going state court litigation, until such litigation is resolved, the amount "owed" to IDS' cannot be readily calculated with any precision or accuracy. Therefore, since the amount, if any, of Debt-

or's personal liability to IDS has not been established prior to the petition date, IDS' state court claim will be treated as unliquidated.

**2. Contingent Versus Noncontingent Debt**

A claim is contingent if:

The debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.

*In re Pennypacker,* 115 B.R. 504, 507 (Bankr.E.D.Pa.1990) (citation omitted). Disputed claims are not necessarily contingent. *Id.* However, the claim is contingent if liability depends on some future event, which may or may not occur, and which, therefore, makes it wholly uncertain whether ultimately there ever will be a liability.

Chapter 13 eligibility should not be predicated on the mere demands of creditors. *In re Lambert,* 43 B.R. at 923. In the present case, Debtor alleges he does not owe money to IDS. Debtor produced evidence that the contract between IDS and TLM was made for the corporation and not for the Debtor individually. Debtor has not been adjudged liable for any amount in favor of IDS. The Court will only consider those amounts admitted by Debtor or owed by operation of law. Although it appears Debtor concedes in his brief that the $83,000 disputed claim listed in his Schedule F is liquidated and noncontingent, this Court has closed the taking of evidence and will limit its findings to the evidence admitted at trial. Therefore, the evidence indicates that Debtor has not admitted to personally owe any portion of IDS' claim, nor has it been deemed owed by operation of law. Since IDS' disputed claim is not certain as to liability on the part of Debtor, its claim is contingent. *See In re All Media Properties, Inc.,* 5 B.R. 126, 133 (Bankr.S.D.Tex.1980).

For the reasons discussed above, this Court finds that IDS has failed to meet its

burden of proof. Therefore, this Court cannot consider IDS' claim when determining Chapter 13 eligibility in this case.

### CONCLUSION

Debtor has set forth sufficient evidence to establish that he qualifies as an individual with regular income pursuant to 11 U.S.C. § 109(e). Further, IDS has failed to demonstrate to the Court that Debtor's unsecured debts exceed the eligibility requirements for relief under Chapter 13. Therefore, after considering the evidence presented, the Court concludes that IDS' Motion to Dismiss is not well taken, and is thus denied. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.