**In re Victor MERCADO and Angela Clarice Mercado, Debtors.**

No. 06–03995.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Sept. 24, 2007.

Robert W. Elrod, Jr., Jacksonville, FL, for Debtors.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the Chapter 7 Trustee's Motion to Vacate Conversion of Debtors' Chapter 7 Case to Chapter 13. After an evidentiary hearing held on June 26, 2007, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. On December 28, 2005, joint debtor, Angela Clarice Mercado ("Mrs.Mercado"), sold real property located at 12719 Palmetto Street, Jacksonville, Florida (the "Palmetto Street Property"), and received funds totaling $37,693.09, which she depos-

---

ited into her Vystar Credit Union account (the "Vystar account"). (Tr. Ex. 10). At the time Mrs. Mercado sold the Palmetto Street Property, neither she nor the other joint debtor, Victor Mercado ("Mr.Mercado"), resided there.[1]

2. Prior to depositing the proceeds from the sale of the Palmetto Street Property, Mrs. Mercado's Vystar account had a balance of $34,090.33. (Tr. Ex. 13). Mr. Mercado testified that the pre-existing balance was money that Mrs. Mercado had saved over time, and that she kept the money in her account so that he would not spend it. After depositing the $37,693.09 from the sale of the Palmetto Street Property, Mrs. Mercado's Vystar account had a balance of $71,783.42. (Tr. Ex. 13).

3. On May 8, 2006, Mrs. Mercado withdrew $63,349.54 from her Vystar account and used the funds to purchase a home located at 44142 Red Oak Court, Callahan, Florida (the "Callahan Property").[2] (Tr. Exs.11, 13).

4. Mr. Mercado testified that when his wife purchased the Callahan Property, their debts exceeded the value of their assets, and a lawsuit was pending against him. (Tr. Ex. 9). Mr. Mercado further testified that the $63,349.54 Mrs. Mercado used to pay for the Callahan Property was substantially all of their assets at the time.

5. On December 14, 2006 (the "Petition Date"), the Mercado's filed for Chapter 7 relief under the Bankruptcy Abuse Pre-

---

**1.** Mrs. Mercado acquired the Palmetto Street Property in 1997, as a gift from her grandfather, and she lived there until 2002. In October 2002, Mrs. Mercado's grandfather purchased another home for her located at 216 Bon Air Drive (the "Bon Air Property"), Jacksonville, Florida, and she moved there because she thought it was located in a safer neighborhood. Mr. Mercado moved into the

Bon Air Property with Mrs. Mercado in October 2002, and, in December 2002, they married. The Mercado's attempted to sell the Palmetto Street Property from late 2002, until it ultimately sold, in December 2005. (Tr. Ex. 10).

**2.** There is no mortgage on the Callahan Property, as Mrs. Mercado paid cash for it.

vention and Consumer Protection Act ("BAPCPA").[3] (Tr. Ex. 2).

6. On Schedule A of their petition, the Mercado's indicated that they owned the Callahan Property in fee simple, and listed its current value as $65,000.00. On Schedule C, the Mercado's claimed the Callahan Property as exempt homestead. (Tr. Ex. 2).

7. On Schedule F of their petition, the Mercado's listed unsecured debts totaling $125,336.68. (Tr. Ex. 2). Mr. Mercado testified that at the time his wife purchased the Callahan Property, their debts listed on Schedule F exceeded $50,000.00, and were comprised primarily of credit card debt.

8. Schedule J of the Mercados' petition reflects monthly expenses of $3,206.66. (Tr. Ex. 2).

9. In response to Question ten (10) on the Statement of Financial Affairs,[4] the Mercado's indicated that on December 28, 2005, they sold the Palmetto Street Property and received $43,000.00, which was used as a down payment on the Callahan Property. (Tr. Ex. 2). The Mercado's failed to indicate that Mrs. Mercado purchased the Callahan Property on May 8, 2006, or that she paid $63,349.54, in cash, for it.

10. On February 12, 2007, the Chapter 7 Trustee filed an objection to the Merca-dos' claim that the Callahan Property was exempt homestead. (Tr. Ex. 4).

11. A hearing on the Chapter 7 Trustee's Objection to the Mercados' Claim of Exemption, regarding the Callahan Property, was set for May 15, 2007. (Tr. Ex. 5).

12. On May 2, 2007, the Mercado's filed a Voluntary Notice of Conversion of their case, from Chapter 7 to Chapter 13. (Tr. Ex. 6).

13. On May 3, 2007, the Court entered a Notice of Conversion of Case to Chapter 13, without a hearing. (Tr. Ex. 8).

14. On May 10, 2007, the Chapter 7 Trustee filed a Motion to Vacate Conversion of the Mercados' Chapter 7 Case to Chapter 13. In his motion, the Chapter 7 Trustee claimed that the Mercado's cannot be Chapter 13 debtors because: (i) they do not have regular income pursuant to 11 U.S.C. § 109(e), and (ii) they have acted in bad faith prior to, and during the administration of, their bankruptcy case.

15. The Chapter 7 Trustee alleges that the Mercado's have acted in bad faith in converting their case to Chapter 13, because: (i) they converted $63,349.54 of non-exempt assets into an alleged exempt homestead (the Callahan Property) when they had debts of at least $50,000, which they were not making payment on; (ii) Mr. Mercado had a lawsuit pending against

---

**3.** The Mercado's indicated that their bankruptcy filing was necessitated by two events which resulted in them being unable to pay their bills as they became due. First, shortly before Mrs. Mercado purchased the Callahan Property in May 2006, Mr. Mercado lost his job. Second, after moving to the Callahan Property, the Mercado's were unable to attract offers for the Bon Air Property, which they were attempting to sell to pay off their creditors.

**4.** Entitled "Other transfers," Question ten (10) requests that the debtor(s):

List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

him when his wife purchased the Callahan Property; (iii) they failed to indicate on their Statement of Financial Affairs that Mrs. Mercado purchased the Callahan Property in May 2006, and that she used approximately $26,000.00 [5] in additional non-exempt funds to purchase it; and (iv) the "sole reason" why they converted their case to Chapter 13 was to avoid the May 15 hearing on the objection to exemption, concerning the Callahan Property. (Tr. Exs. 2, 4, 9).

16. On June 25, 2007, the Mercado's filed an Amended Schedule I, indicating that Mr. Mercado began working as a truck driver in April 2007, earning gross wages of $3,250.00 per month, with net take home pay of $2,816.67. (D.Ex.1). The Mercados' original Schedule I indicated that Mr. Mercado was unemployed and Mrs. Mercado was a homemaker; they listed no current monthly income. Also, the Mercados' Statement of Financial Affairs indicated that they earned no income in 2006. (Tr. Ex. 2).

17. On June 26, 2007, the Court held a hearing on the Chapter 7 Trustee's Motion to Vacate Conversion of the Mercados' Chapter 7 Case to Chapter 13.[6] At the hearing, Mr. Mercado testified that he and his wife converted their case to Chapter 13 because he secured new employment in April 2007, and they wanted to pay back their creditors.

18. The Mercados' Chapter 13 plan proposes to pay their unsecured creditors $5,400.00 ($150.00 per month for thirty-six

(36) months), while they owe such creditors $125,336.68. (Tr. Exs. 2, 7).

19. Mr. Mercado testified that he and his wife have four (4) children, and that the principal reason they decided to move from the Bon Air Property to the Callahan Property was to avoid the potential danger associated with living immediately adjacent to a registered Sexual Offender. (D.Ex.2).[7] Mr. Mercado testified that the Sexual Offender made several inappropriate comments of a sexual nature to his wife, and such conduct was reported to the police on at least one occasion.

20. The Mercado's claim that, prior to moving to the Bon Air Property, they were not aware that a registered Sexual Offender lived next door.

## CONCLUSIONS OF LAW

The issue before the Court for its determination is whether the Mercado's are entitled to continue administration of their case under Chapter 13 of BAPCPA, in light of the United States Supreme Court's (the "Supreme Court") recent ruling in *Marrama v. Citizens Bank of Mass.*, which established that a debtor does not have an absolute right to convert a case from Chapter 7 to Chapter 13. —— U.S. ——, 127 S.Ct. 1105, 1109–1112, 166 L.Ed.2d 956 (2007).

In *Marrama*, the Supreme Court explained that the issue before it had "arisen with disturbing frequency," and concerned "whether a debtor who acts in *bad faith* prior to, or in the course of, filing a Chapter 13 petition by, for example, fraudulent-

---

5. The Mercado's purchased the Callahan Property for $63,349.54 (in May 2006), after selling the Palmetto Street Property for $37,693.09 (in December 2005), a difference of approximately $26,000.00. (Tr. Exs.10, 11, 13).

6. Mrs. Mercado did not attend the June 26, 2007, hearing.

7. As recently as June 26, 2007, the Florida Department of Law Enforcement's website indicated that W.M. Stewart, a registered Sexual Offender, lives at 224 Bon Air Drive, Jacksonville, Florida. (D.Ex.2). The Mercados' prior address was 216 Bon Air Drive, Jacksonville, Florida.

ly concealing significant assets, thereby forfeits his right to obtain Chapter 13 relief." *Marrama*, 127 S.Ct. at 1107 (emphasis added). The Supreme Court noted that such an issue "may arise in a Chapter 7 case when a debtor files a motion under § 706(a) to convert to Chapter 13." [8] *Id.*

Thus, in light of the *Marrama* decision, the Court must determine whether the Mercado's engaged in bad faith conduct prior to, or in the course of, voluntarily converting their case to Chapter 13. First, however, the Court will determine whether the Mercado's have "regular income," to confirm that they qualify as Chapter 13 debtors, pursuant to 11 U.S.C. § 109(e).

*A. Regular Income Analysis— § 109(e)*

▮▮▮ Section 109(e) provides, in pertinent part, that "[o]nly an individual with regular income ... may be a debtor under chapter 13." 11 U.S.C. § 109(e) (2007).[9] Thus, in order to continue proceeding with their case under Chapter 13, the Mercado's must demonstrate that they have "regular income." *In re Baird*, 228 B.R. 324, 328 (Bankr.M.D.Fla.1999) (stating that the debtor has the burden of demonstrating that he/she has regular income, and that "the test for 'regular income' is not the type or source of income, but rather its regularity and stability").

Section 101(30) of BAPCPA provides:

[An] 'individual with regular income' means [an] individual whose income is sufficiently stable and regular to enable such individual to make payments under

chapter 13 of this title, other than a stockbroker or a commodity broker. 11 U.S.C. § 101(30) (2007).

Although § 109(e) "provides no guidance as to when the regular income determination is made," this Court has clearly stated that it is not limited to the Petition Date "[in] determin[ing] whether a debtor has regular income but may view the circumstances prospectively, such as at the time of confirmation." *In re Goodrich*, 257 B.R. 101, 103 (Bankr.M.D.Fla.2000); *see Baird*, 228 B.R. at 328. Further, this Court has previously stated that "[t]he real test" in determining whether a debtor has regular income, "is whether [the][d]ebtor is able to make the required payments under the plan." *Goodrich*, 257 B.R. at 103; *see Baird*, 228 B.R. at 329 (also indicating that "this Court does not find the evidence contained in the [debtor's] [s]chedules to be conclusive of a lack of sufficient income to fund the plan").

The Chapter 7 Trustee argues that the Mercados' income is not sufficient, stable, or regular enough, to enable them to make payments under a Chapter 13 plan. In support, the Chapter 7 Trustee points out that: (i) Mr. Mercado has not offered any documentary proof, or other evidence, to show that he earns regular income; (ii) the Mercados' bankruptcy schedules reflect that their monthly expenses, $3,206.66, exceed their net monthly income of $2,816.67; and (iii) the Mercados' Statement of Financial Affairs reveals that they earned no income in 2006.[10] (D.Ex.1, Tr. Ex. 2). Thus, the Chapter 7 Trustee contends that there is insufficient proof to show that the

---

**8.** Although the Mercado's did not file a motion to convert to Chapter 13, they did file a Notice of Voluntary Conversion (like the debtor in *Marrama* ), pursuant to 11 U.S.C. § 706(a). (Tr. Ex. 6); *Marrama*, 127 S.Ct. at 1108. In *Marrama*, the Supreme Court noted that when a debtor files a notice of conversion to Chapter 13, it is "treated as a motion to

convert," pursuant to Federal Rule of Bankruptcy Procedure 1017(c)(2). *Id.*

**9.** Section 109(e) was not amended by BAPCPA.

**10.** The Mercado's did earn $44,512.00 in 2004, and $24,268.00 in 2005. (Tr. Ex. 2).

Mercado's are capable of making the required payments under a Chapter 13 plan.

In response, the Mercado's assert that they do have regular income, and in support, they highlight the fact that their Amended Scheduled I reflects that Mr. Mercado currently earns gross wages of $3,250.00, with net take home pay of $2,816.67. (D.Ex.1). Further, the Mercado's assert that, as they have begun making payments under their proposed plan, that the Chapter 7 Trustee's arguments, regarding their alleged lack of regular income, are not a valid concern.

█ The Court agrees with the arguments set forth by the Mercado's, and finds that they have "regular income," within the meaning of § 109(e) of BAPC-PA.[11] The Mercados' amended Schedule I, filed on June 25, 2007, demonstrates that Mr. Mercado earns regular monthly income of $3,250.00, with net take home pay of $2,816.67. (D.Ex.1). Further, the Chapter 7 Trustee's argument that the Mercado's lack sufficient income because their monthly expenses exceed their net monthly income, is not dispositive, as this Court has clearly stated that it "does not find the evidence contained in the [debtor's] [s]chedules to be conclusive of a lack of sufficient income to fund the plan." *Baird*, 228 B.R. at 329. Finally, as the Mercado's have begun making payments under their proposed plan, they have shown the ability, at least initially, to make the required payments in the event their proposed plan is confirmed. *See Goodrich*, 257 B.R. at 103 (indicating that "[t]he real test" in determining whether a debtor has regular income, "is whether [the][d]ebtor is able to make the required payments under the plan"). Accordingly, the Merca-

do's are individuals with regular income, pursuant to § 109(e).

As the Court has determined that the Mercado's have regular income, it must now determine, in accordance with the *Marrama* ruling, whether they engaged in bad faith conduct prior to, or during the course of, converting their case.

### B. The Marrama Ruling

In *Marrama*, the debtor disclosed on his bankruptcy schedules that he was the sole beneficiary of a trust that owned a house in Maine, and he listed the value of his beneficial interest as zero. *Marrama*, 127 S.Ct. at 1108. In fact, the Maine property had substantial value and the debtor transferred it to the trust seven (7) months prior to filing bankruptcy, without disclosing the transfer on his Statement of Financial Affairs. The debtor later admitted that the purpose of transferring the Maine property to the trust was to protect it from his creditors. *Id.*

After the debtor's examination at the meeting of creditors, the Trustee advised debtor's counsel that he intended to recover the Maine property as an asset of the bankruptcy estate. *Id.* Thereafter, debtor filed a notice of conversion, from Chapter 7 to Chapter 13, and the Trustee subsequently objected to the proposed conversion. The Trustee's objection was based upon the argument that debtor's attempt to convert was made in bad faith, and would constitute an abuse of the bankruptcy process. *Id.* The bankruptcy court agreed, and denied the debtor's request for conversion. *Id.* at 1109.

On appeal, debtor's principal argument was that he had an absolute right to con-

11. In reaching its decision, the Court used the date of the hearing on the Chapter 7 Trustee's Motion to Vacate Conversion (June 26, 2007), as the date for determining whether the Mer-

cado's had regular income. *See Goodrich*, 257 B.R. at 103. It should be noted that the Court has not confirmed the Mercados' Chapter 13 plan.

vert the case from Chapter 7 to Chapter 13 under the plain language of 11 U.S.C. § 706(a). *Id.* However, the Bankruptcy Appellate Panel for the First Circuit (the "BAP") disagreed, and affirmed the bankruptcy court's ruling denying conversion. *Id.*

Debtor then appealed to the Court of Appeals for the First Circuit (the "First Circuit"), which affirmed the BAP's ruling, and reasoned that, upon a showing of bad faith conduct, a Chapter 7 debtor does not have an absolute right to convert to Chapter 13, pursuant to § 706(a). *Id.* The debtor then appealed to the Supreme Court.

The Supreme Court affirmed the First Circuit's decision, and, in doing so, stated that the broad description of the right to convert as "absolute" in Senate and House Committee Reports "fails to give full effect to the express limitation in subsection (d) [of § 706]," which provides that ". . . a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." *Id.* at 1110. Further, the Supreme Court noted that § 1307(c) provides that a Chapter 13 case may be dismissed or converted to a Chapter 7 case for "cause." *Id.* In construing the two provisions in conjunction with one another (§§ 706(d) and 1307(c)), the Supreme Court reasoned that "pre-petition *bad faith* conduct, including fraudulent acts committed in an earlier Chapter 7 [case]," constituted "cause," and would prohibit a debtor from

subsequently converting his/her case to Chapter 13. *Id.* at 1111 (emphasis added). Thus, the Supreme Court held that § 706(d), in conjunction with § 1307(c), provided adequate authority to deny the debtor's motion to convert.[12] *Id.* at 1110–1111.

## C. Bad Faith Analysis—Marrama

 The Chapter 7 Trustee argues that the Mercados' conversion to Chapter 13 should be vacated, as they have acted in bad faith prior to, and during the course of, converting their case. In determining what type of conduct constitutes "bad faith" by a debtor, the Supreme Court stated:

> We have no occasion here to articulate with precision what conduct qualifies as 'bad faith' sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7. It suffices to emphasize that the debtor's conduct must, in fact, be *atypical.* Limiting dismissal or denial of conversion to *extraordinary* cases is particularly appropriate in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation. 11 U.S.C. § 1325(a)(3). *Id.* at 1112 n. 11 (emphasis added).

In support of his argument, the Chapter 7 Trustee asserts that seven (7) months prior to the Petition Date, the Mercado's converted $63,349.54 of non-exempt funds

---

**12.** In support of its holding, the Supreme Court stated:

Nothing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor. On the contrary, the broad authority granted to bankruptcy judges to take any

action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors. *Id.* at 1111–1112.

into an alleged exempt homestead. Further, at the time of purchasing the Callahan Property, the Chapter 7 Trustee claims that: (i) the Mercado's were insolvent and had debts of at least $50,000.00; (ii) the Mercado's had ceased making payments on their debts; and (iii) Mr. Mercado had been sued. (Tr. Ex. 9). Additionally, the Chapter 7 Trustee asserts that, although the Mercado's disclosed the sale of the Palmetto Street Property on their Statement of Financial Affairs, they failed to reveal that Mrs. Mercado used approximately $26,000.00 in additional non-exempt funds to purchase the Callahan Property in May 2006. (Tr. Ex. 2).

The Chapter 7 Trustee further argues that conversion of the Mercados' case to Chapter 13 amounts to an abuse of the bankruptcy process, pursuant to 11 U.S.C. § 105(a) of BAPCPA. See Marrama, 127 S.Ct. at 1112. Although Mr. Mercado testified that he and his wife converted their case because he was able to secure a new job in April 2007, the Chapter 7 Trustee asserts that this testimony is not credible. It is the Chapter 7 Trustee's contention that the sole reason the Mercado's converted their case to Chapter 13 was to avoid the upcoming hearing on his objection, as to whether the Callahan Property qualified as exempt homestead.[13] (See Tr. Exs. 4, 5). As further evidence of abuse, the Chapter 7 Trustee indicates that, although the Mercados' Schedule F lists unsecured debts of $125,336.68, they propose to pay unsecured creditors only $5,400.00 over the life of their plan.[14] (Tr. Exs. 2, 7).

In response, the Mercado's argue that they have not engaged in bad faith conduct, and claim that the circumstances surrounding the conversion of their case to Chapter 13 are "totally different," from the circumstances surrounding the debtor's proposed conversion, in Marrama. See Marrama, 127 S.Ct. at 1107–1108. In support, the Mercado's assert that they "clearly disclosed" all of the real estate transactions which they were required to disclose in their Chapter 7 petition, and that they "made no attempt to conceal [assets]," from the Chapter 7 Trustee or the Court. (See Tr. Ex. 2). In further support, the Mercado's highlight the fact that they disclosed their fee simple ownership of the Callahan Property on Schedule A, listing its value as $65,000.00. (Tr. Ex. 2). Moreover, the Mercado's dispute the Chapter 7 Trustee's contention that they purchased the Callahan Property using non-exempt funds, and claim that they purchased the property by using the $37,693.09 in proceeds derived from the sale of Palmetto Street Property, plus an additional $26,000.00 from a mortgage they had taken out on the Bon Air Property prior to this case.

Additionally, the Mercado's indicate that the timing of their voluntary conversion to Chapter 13 was heavily influenced by Mr. Mercado's new employment, which allows them to repay a portion of the debts owed to their creditors. (D.Ex.1). Finally, the Mercado's maintain that the predominant reason they purchased the Callahan Property, and moved there, was to ensure the

---

**13.** The Chapter 7 Trustee asserts that there was a "good chance" that his objection to the Mercados' alleged homestead exemption would have been sustained. (Tr. Ex. 4).

**14.** Also, the Chapter 7 Trustee claims that, if the Court determines that the Callahan Property is not exempt, the Mercado's will be required to pay their creditors the present

value of $63,349.54 (or that portion determined to be non-exempt) under their Chapter 13 plan, and not the $5,400.00 they currently propose to pay. The Chapter 7 Trustee states that the Mercado's lack the funds necessary to pay creditors $63,349.54, and therefore, conversion of their case "serves no purpose."

348

safety of themselves and their four (4) children, as a registered Sexual Offender lived next door to them at the Bon Air Property. (D.Ex.2). In light of the Sexual Offender's proximity to the Bon Air Property, the Mercado's argue that they acted in good faith in purchasing the Callahan Property, and at all other relevant times; thus, they request that the Court permit their case to continue under Chapter 13.

The Court agrees with the Chapter 7 Trustee's arguments, and finds that the Mercado's have engaged in bad faith conduct. Even assuming, without deciding, that the $37,693.09 derived from the sale of the Palmetto Street Property was exempt, the additional $26,000.00 used to purchase the Callahan Property was not exempt, as the additional funds comprised a portion of the non-exempt $34,090.33 that was in Mrs. Mercado's Vystar account, prior to purchasing the Callahan Property. (Tr. Exs.10, 13). Further, the record is devoid of any documentary evidence, or testimony, to support the Mercados' claim that the additional $26,000.00, used to purchase the Callahan Property, was derived from a mortgage which they had taken out on the Bon Air Property sometime prior to this case. Although the Court finds the Mercados' testimony regarding their concerns about living next to a registered Sexual Offender to be credible, such concerns do not excuse their actions in concealing the fact that they converted non-exempt assets into an alleged exempt homestead, or their failure to properly disclose the requisite details surrounding their purchase of the Callahan Property. (Tr. Ex. 2).

Furthermore, like the debtor in *Marrama*, who made "misleading" statements on his schedules, and failed to disclose that he transferred valuable real property into a trust only seven (7) months prior to filing for relief, the Mercado's made misleading statements in failing to disclose that Mrs.

Mercado: (i) purchased the Callahan Property only seven (7) months prior to filing for relief; (ii) used at least $26,000.00 in non-exempt funds to purchase the Callahan Property; and (iii) paid $63,349.54 in cash, for the Callahan Property. *See Marrama*, 127 S.Ct. at 1108, (Tr. Ex. 11). In accordance with the *Marrama* decision, this Court finds that the Mercados' conduct, prior to converting their case, was misleading and atypical. *See Id.* at 1112 n. 11. Thus, the Mercado's were not entitled to convert their case from Chapter 7 to Chapter 13; accordingly, the conversion to Chapter 13 is hereby vacated.

### CONCLUSION

Based upon the above, the Chapter 7 Trustee's Motion to Vacate Conversion of Debtors' Chapter 7 Case to Chapter 13 is GRANTED. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

**ORDERED.**